**John BEATTY, et al., Appellants,**

**v.**

**STATE TAX COMMISSION, Respondent,**

**and**

**Robert S. Rothchild, et al., Intervenors–Respondents.**

No. 78410.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1995.

David B. Rogers, Columbia, for appellants.

Jeremiah W. (Jay) Nixon, Attorney General, F. Martin Dajani, Carol Aikens, Assistant Attorneys General, Jefferson City, for respondent.

David J. Newburger, James P. Gamble, Bernard W. Gerdelman, St. Louis, for intervenors-respondents.

James G. Rittenbaum, Clayton, for amicus Missouri Association of School Administrators.

ROBERTSON, Judge.

House Bill No. 211, 1995 Laws of Missouri ____, West's No. 65, § A 256–261, repeals former section 137.016, RSMo 1994, and enacts a new section 137.016, RSMo 1995, effective August 28, 1995. H.B. 211 contains a broader definition of the term "residential property" than its predecessor and makes that new definition applicable as of January 1, 1995. Appellants in this case. claim that the resulting reclassification of certain types of residential real property for purpose of assessing taxes for the 1995 tax year and the recoupment of lost tax revenue provision in section 137.016 operate retrospectively and violate several provisions of the Missouri and United States Constitutions.

The trial court found the statute constitutional. This appeal followed and raises issues involving the construction of a revenue law of this state. Exclusive appellate jurisdiction is vested in this Court by article V, section 3 of the Missouri Constitution. The judgment of the trial court is affirmed.

## I.

Appellants John Beatty, Laura Beatty, and Robert Meyer reside in, own real property in, and pay real estate taxes to Pettis County, Missouri. Pettis County is a fourth-class county. § 48.020, RSMo 1994; *Official Manual,* State of Missouri 1995–1996, p. 792. Appellants JLB and Associates, Inc. ("JLB") is a Missouri corporation engaged in the business of contracting with owners of residential apartment properties containing more than four units for the purpose of decreasing the real property tax on such real property. JLB achieves lower real property taxes by filing condominium declarations on its clients' residential apartment properties. Until the passage of H.B. 211, the filing of the condominium declaration changed the tax classification of the property from commercial to residential. Residential property is taxed at nineteen percent of true value; commercial property is taxed at thirty-two percent of true value. § 137.115.5, RSMo 1994.

John Beatty is the president of JLB. On December 27, 1994, JLB and Curry Investment Company ("Curry") entered into a written contract under which JLB agreed to convert apartments owned by Curry to condominiums in order to reduce Curry's tax liability. Curry agreed to pay JLB fifty percent of the property tax savings realized for the first year of reclassification for property tax assessment purposes.

On June 1, 1995, the Governor approved H.B. 211. Former section 137.016 defined residential property as follows:

All real property improved by a structure which is used or intended to be used for residential living by human occupants and *which contains not more than four dwelling units or which contains single dwelling units owned as a condominium* or in a cooperative housing association or an independent living facility for the elderly.

[Emphasis added.] H.B. 211, section 137.016.1, alters the definition of residential property. Effective August 28, 1995, residential property is:

All real property improved by a structure which is used or intended to be used for residential living by human occupants, vacant land in connection with an airport, land used as a golf course, and manufactured home parks ...

This definition "shall apply to assessments made after December 31, 1994." H.B. 211, § 137.016.3.

Under H.B. 211, all residential property is taxed as residential property. It no longer matters how many apartment units the property contains.

The new statute also authorizes taxing districts to adjust their operating levy to recoup revenue lost as a result of the reclassification of residential structures containing five or more units. Taxing districts may not increase their levy beyond the "the highest tax rate in effect subsequent to the 1980 tax year." H.B. 211, § 137.016.2.

H.B. 211 eliminated the need for companies like JLB to continue in the business of converting apartments into condominiums for purposes of achieving real property ad valorem tax savings. Realizing this, JLB, the Beattys and Meyer ("appellants") filed a declaratory judgment action against the director of revenue and the State Tax Com-

mission ("Commission") alleging that the retrospective application of the new section 137.016 violates a number of provisions of the Missouri and United States Constitutions. Appellants asked the trial court to issue a permanent injunction enjoining the application of H.B. 211 to 1995 tax bills, for a declaration that H.B. 211 is unconstitutional, and for an award of costs and attorneys' fees.

On October 4, 1995, the director of revenue filed a motion to dismiss claiming she lacks authority over the Commission, county collectors, or the processes of assessing, equalizing, or collecting real property taxes. The trial court sustained the director's motion, dismissing her from the action on October 6, 1995. Also on October 6, the trial court sustained the motions of several corporate and individual taxpayers ("intervenors") to intervene, permitted these intervenors to file answers to appellants' petition, and conducted a hearing on the motions of the parties for judgment on the pleadings. The trial court entered judgment in favor of respondents and assessed costs to appellants. This appeal followed.

## II.

■ This appeal arises from a judgment entered on the pleadings. We take all well-pleaded facts as true. *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343, 345 (Mo. banc 1981). The record does not reveal, nor could appellants have pled at the time of trial, facts that would support this Court's conclusion that Pettis County has applied H.B. 211 in a manner that violates the constitution. Therefore, we limit our review to appellants' claim that H.B. 211 is facially unconstitutional.

■ Statutes are presumed constitutional. Courts may not declare statutes unconstitutional unless they clearly contravene a constitutional provision. *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 340 (Mo. banc 1993). Where a party attacks the facial validity of a statute, a court may declare that statute unconstitutional only if there are no possible interpretations of the statute that conform to the requirements of the constitution. *U.S. v.*

*Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987).

■ A final preliminary matter: The statutes relating to the assessment and levy of real property ad valorem taxes do not apply equally to every class of county in this state. Therefore, the discussion that follows relates only to fourth class counties.

### A.

■ Appellant's first two points on appeal reveal the bifurcated nature of their interests in this litigation. The Beattys and Meyer charge that H.B. 211 violates article I, section 13 of the Missouri constitution because the statute operates retrospectively. JLB contends that H.B. 211 violates the contract clauses of the state and federal constitutions because the statute interferes with contracts between it and its clients. Both arguments depend for their success on a conclusion that H.B. 211 operates retrospectively. Indeed, appellants concede that their contract clause arguments fail if H.B. 211 does not operate retrospectively.

Article I, section 13 of the Missouri Constitution provides:

"That no ... law ... impairing the obligation of contracts, or retrospective in its operation ... can be enacted." Article I, section 10 of the United States Constitution states that "[n]o state shall ... pass any ... law impairing the obligation of contracts...."

The Beatty and Meyer appellants offer the following constitutional argument: (1) H.B. 211 did not take effect until August 28, 1995; (2) it purports to change the definition and therefore the tax classification of certain residential structures in effect on January 1, 1995; (3) because of that change in tax classification, the taxing districts in Pettis County may increase their tax levies to recoup revenue lost as a result of reclassification; (4) that appellants' taxes may increase above the amount they would have been required to pay had the January 1, 1995 tax classifications remained in effect; (5) that under section 137.075, RSMo 1994, they have a vested right to the tax liability for real property as of January 1, 1995; and (6) therefore, H.B.

211 violates article I, section 13 because the statute operates retrospectively.

The Commission and the intervenors contend that tax liability is not determined as of January 1 and that no rights vested in appellants prior to August 28, 1995, the effective date of H.B. 211. This is because, they argue, no rights vest in a taxpayer until the tax rate is set and amount of the tax can be determined. Because the amount of appellants' taxes could not be determined prior to August 28, 1995, H.B. 211 does not operate retrospectively.

### 1.

Appellants are correct in their argument that H.B. 211 is retrospective. It intends by its clear language to apply to events that took place prior to August 28, 1995, the effective date of the statute.

■ The constitution does not forbid retrospective laws, however. Instead, it condemns laws that *operate* retrospectively. *Dial v. Lathrop R–II School District*, 871 S.W.2d 444, 447 (Mo. banc 1994).

■ A statute operates retrospectively—is retroactive—if it takes away or impairs a vested or substantial right or imposes a new duty in respect to a past transaction. *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 340 (Mo. banc 1993), *citing Lucas v. Murphy*, 348 Mo. 1078, 156 S.W.2d 686, 690 (banc 1941).

> [A] vested right ... must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another.

*Fisher v. Reorganized School District*, 567 S.W.2d 647, 649 (Mo. banc 1978). In general, neither persons nor entities have a vested right in a general rule of law or legislative policy that would entitle either to insist that a law remain unchanged. *Cosada Villa of Missouri v. Department of Social Services*, 868 S.W.2d 157, 160 (Mo.App.1994) (no vested right to continuation of state regulations providing for reimbursement), *citing State v. Thomaston*, 726 S.W.2d 448, 460 (Mo. banc 1987) (no vested right in rule of evidence).

### 2.

H.B. 211 operates retrospectively only if appellants had a right to pay a certain amount of tax that vested prior to August 28, 1995. The determination of whether appellants had such a vested right requires a general discussion of the manner in which real property is taxed in Missouri. The process is complicated; we do not intend an exhaustive recitation of it. *See generally,* chapter 137, RSMo 1994.

The determination of the amount of tax liability that attaches to a particular parcel of real property consists of two processes: the assessment of the property and the levying of the tax.

Assessment is a process by which the assessor identifies property by parcel and owner, values it, classifies it and lists it so that taxing authorities can apply their tax levies. *See generally,* § 137.115, RSMo 1994. Under section 137.080, RSMo 1994, assessment is a continuing process *"which commences* on the first day of January." [Emphasis added.] The assessor has until May 31 of the tax year to submit the "assessor's book" to the county governing body. § 137.245, RSMo 1994. The assessor's book contains a "land list" and a list of personal property. § 137.215, RSMo 1994. Section 137.235, RSMo 1994, requires each list to have "three columns for values:" the total assessed valuation of the property; the valuation of the property as corrected by the county board of equalization; and the valuation of the property as equalized by the Commission.

The second part of the taxing process, the levy, is the method by which the specific amount of tax due becomes known. After the assessor submits the assessor's book to the governing body of the county, the governing body of the county sets the annual tax levy rate. This rate is comprised of "[t]he state tax and taxes necessary to pay the funded or bonded debt of the state, county, township, municipality, road district, or school district, the taxes for current expendi-

tures for counties, townships, municipalities, road districts and school districts, including taxes which may be levied for library, hospitals, public health, recreation grounds and museum purposes...." § 137.035, RSMo 1994. Section 137.055, RSMo 1994, requires the governing body to "fix the rate of taxes" after a public hearing "but not later than September twentieth of each year."

For purposes of ad valorem real property taxation, ownership of real property is determined on the first day of January.

> Every person owning or holding real property ... on the first day of January, including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year.

§ 137.075, RSMo 1994. Real property is listed and its use for tax classification purposes is determined as of January 1 of a tax year. § 137.115.1, RSMo 1994. On January 1 of each tax year, the taxing authorities obtain an inchoate tax lien in the real property. § 137.085.2; *Long v. City of Independence*, 360 Mo. 620, 229 S.W.2d 686, 690 (1950). The inchoate lien becomes a fixed encumbrance "as soon as the amount of taxes is determined by assessment and levy." § 137.085.2, RSMo 1994.

### 3.

Appellants claim that their right to an assessment and levy process that proceeds without change from January 1 of the tax year vested on January 1. They claim this vested right includes the continuation of the definitions used for classification purposes in former section 137.016, in effect on January 1.

We disagree. As of January 1, appellants had no more than an expectation that the legislature would not alter the definition of residential property. A vested right is more than a mere expectation that a particular law will continue in effect. *Fisher*, 567 S.W.2d at 649.

As is evident from the statutory scheme, rights to a particular amount of tax do not vest in a taxpayer until assessment and levy are complete. At this point the government's lien becomes "a fixed encumbrance" under section 137.085.2, and the taxpayer's liability for tax is reduced to a sum certain. The definitions used to arrive at that sum certain are but a part of a continuing process that begins January 1 of the tax year and is not completed until not later than September 20 of the tax year. Until the tax liability is fixed as a sum certain, the definitions used to arrive at that liability are subject to change by the legislature.

Appellants do not contend in their pleadings that Pettis County determined its tax levy prior to August 28, 1995. Therefore, their right to the definition of residential property in effect on January 1 did not vest until after August 28. Assuming for the sake of argument only that Pettis County did increase its residential tax levy to recoup revenue lost through reclassification, H.B. 211 did not operate retrospectively because the tax liability of these appellants was not reduced to a sum certain by that date.[1]

The point is denied.

### B.

Appellant JLB's assertion that H.B. 211 violates the contract clauses of the Missouri Constitution and the United States Constitution is lost in our conclusion that H.B. 211 does not operate retrospectively.

### C.

Article III, section 39, states:

The general assembly shall not have power:

\*     \*     \*     \*     \*     \*

(5) To release or extinguish or to authorize the releasing or extinguishing, in whole or in part, without consideration, the indebtedness, liability or obligation of any corporation or individual due this state or any county or municipal corporation.

---

1. Had it been pled and proven that the tax levy was set prior to August 28, the Court would have, of course, been presented with a different situation. Whether taxpayers would then have a vested right under the law in effect prior to August 28 and whether H.B. 211 would operate retrospectively to infringe that right are questions that need not be addressed here.

For their third point, appellants argue that H.B. 211 violates article III, section 39(5), because it reclassifies certain commercial property as residential property, lowers the percent of true value against which taxes are imposed and does so without consideration. To prevail on this argument, appellants must show that these taxpayers owed an indebtedness, liability or obligation to Pettis County prior to August 28, 1995, and that H.B. 211 released or extinguished that indebtedness, liability of obligation without consideration.

As we have previously explained, an inchoate obligation to pay *some* tax on real property accrues on January 1 of the tax year. The amount of that tax is not known with certainty until not later than September 20 of the tax year. Because the amount of the tax is uncertain until not later than September 20, no obligation, liability or indebtedness within the meaning of article III, section 39(5), exists until that date. On August 28, 1995, H.B. 211 could not extinguish or release any taxpayer's indebtedness, liability or obligation because no taxpayer's tax liability had been determined by that date.

The point is denied.

### D.

Article III, section 29, states that "[n]o law passed by the general assembly ... shall take effect until ninety days after the adjournment of the session...." Appellants contend that H.B. 211 violates article III, section 29, because it applies to assessments made as of January 1, 1995, but did not take effect until August 28, 1995. We recognize this argument for what it is—a creative, but legally meaningless attempt to argue retrospective operation from a different angle. Having determined that H.B. 211 does not operate retrospectively, we deny the point without further discussion.

### E.

■ Appellants next contend that H.B. 211 offends article IV, section 22, mandating that "[t]he department [of revenue] shall collect all taxes and fees payable to the state as provided by law." Appellants assert that because Pettis County assessed taxes for the 1995 tax year in accordance with H.B. 211,

the department of revenue failed to collect taxes "as provided by law." In a related point, appellants contend that the trial court improperly dismissed the director of revenue from this suit because "the director of revenue is ultimately responsible for the collection of all taxes in the State of Missouri."

Appellants' contentions miss the mark. The director of revenue has neither the responsibility nor the authority to collect taxes on real property. That duty is vested in the county collector. §§ 136.010.1, 139.100, 140.010, RSMo 1994. "The director of revenue shall have no supervision, authority or control over such actions or decisions of the state tax commission as relates to its duties prescribed by law." § 138.190, RSMo 1994. *See also* Mo. art. X, § 14; § 32.028.3, RSMo 1994; § 1.7(1)(c), Appendix B, RSMo 1994 (vol. 7, p. 8092); *Goldberg v. State Tax Commission*, 618 S.W.2d 635, 639 (Mo.1981).

Appellants' points are denied.

### F.

■ Article X, section 3, states that:

Taxes may be levied and collected for public purposes only, and shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax. All taxes shall be levied and collected by general laws and shall be payable during the fiscal or calendar year in which the property is assessed. Except as otherwise provided in this constitution, the methods of determining the value of property for taxation shall be fixed by law.

For their sixth point, appellants assert that section 137.016 violates article X, section 3, because it is retrospective and is not applied in a uniform matter. We have already disposed of the former contention.

■ As to the uniformity argument, appellants claim that section 137.016 is not uniform because it purports to apply the amended definition of residential property and the former definitions of agricultural and commercial property to the same assessments. Appellants cite no authority in support of their proposition that this violates the constitution, nor do the words of article X, section 3, seem so easily offended. Where a

party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978).

### G.

In their seventh and eighth points, appellants renew their retrospective operation arguments and claim that H.B. 211 violates article X, section 4(b) of the Missouri Constitution, which commands that property "shall be assessed for tax purposes at its value or such percentage of value as may be fixed by law," as well as the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution. Having beaten appellants' retrospective operation arguments lifeless, we see no point in further discussion.

The point is denied.

### H.

Appellants further claim that the trial court erred in failing to award them costs and reasonable attorneys' fees they accrued in bringing this action. Appellants have not prevailed. Thus, attorneys' fees are not available.

### III.

The decision of the trial court is affirmed.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH and COVINGTON, JJ., and GUM, Senior Judge, concur.

WHITE, J., not participating because not a member of the Court when case was submitted.