

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| ARMSTRONG-TROTWOOD, LLC, et al., | ) | No. ED104000 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| STATE TAX COMMISSION | ) | Hon. Joseph L. Walsh, III |
| OF MISSOURI, et al., | ) | |
| | ) | Filed: December 20, 2016 |
| Respondents. | ) | |

## OPINION

This is an appeal from a judgment of the Circuit Court of St. Louis County, which, on review, affirmed decisions of the State Tax Commission ("STC") and the St. Louis County Board of Equalization ("BOE"). The case involves allegations that the STC failed to properly equalize real property valuations among counties resulting in discriminatory tax assessments for several tracts of land located in St. Louis County as compared to similarly-situated properties located in other counties but within the same multi-county taxing jurisdictions.

Seven Appellants, Armstrong-Trotwood, LLC, Armstrong-Brittany, LLC, Armstrong-Arbor Village, LLC, Robert S. Rothschild, Susan H. Rothschild, Geiger Real Estate, Inc., Josh & Elaine, LLC (collectively "Landowners"), appeal from the circuit court's judgment dismissing all five counts of their petition, seeking: judicial review of a contested case before the STC, which dismissed the Landowners' property tax appeals for lack of jurisdiction (Count I); judicial

review of a non-contested case before the STC, which dismissed the Landowners' challenge to the inter-county equalization for lack of jurisdiction (Count IV); and a declaratory judgment that the STC failed to properly conduct inter-county equalization of property valuations (Count II).

We find this Court lacks jurisdiction over this case because the issues involve the "construction of the revenue laws of the state," which is within the exclusive jurisdiction of the Supreme Court of Missouri pursuant to Article V, § 3 of the Missouri Constitution. We therefore transfer this case to the Supreme Court under Article V, § 11.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because this is an appeal from the grant of Respondents' motions to dismiss for failure to state a claim, we accept as true all well-pled allegations in Landowners' petition and liberally grant it all reasonable inferences drawn therefrom. *Mo. Am. Water Co. v. Collector of St. Charles Cnty.*, 103 S.W.3d 266, 268 (Mo. App. E.D. 2003).

Landowners own properties located entirely in St. Louis County. Their land also falls within several multi-county taxing jurisdictions that include parts of Jefferson County and Franklin County. They allege that the assessors in Jefferson and Franklin counties were systematically undervaluing properties in those counties, including properties within their multi-county taxing jurisdictions.

Landowners each timely filed an appeal of their 2011-2012 property tax assessment with the St. Louis County Board of Equalization ("BOE") alleging that their assessments were discriminatory and raising issues of inter-county equalization. They argued that, although the valuations of their properties were accurate, their assessments were nonetheless discriminatory because the assessments and property valuations were not equalized among all the properties within the territorial limits of the multi-county taxing jurisdictions in which their properties are

2

located. These multi-county taxing jurisdictions included the St. Louis Community College District, Special School District of St. Louis County, Rockwood School District, and the Eureka Fire Protection District. The Landowners provided appraisal ratio studies showing that "St. Louis County has a substantially higher appraisal ratio placed on the property on its tax roll than do the jurisdictions in Jefferson County and St. Louis City." Landowners argued that their admittedly correct assessments were discriminatory because "this property and others in St. Louis County are forced to bear a disproportionate share of the cost of operating the above enumerated taxing jurisdictions, while owners of undervalued property in Jefferson County and St. Louis City are paying less than their fair and lawful obligation."

Between September and December of 2011, the BOE sustained the Landowners' assessments. In June of 2012, Landowners timely appealed their cases to the STC. The cases were consolidated in June of 2012, but a hearing officer was not assigned to the case until almost two years later. In July of 2014, the hearing officer dismissed the appeals *sua sponte*, on the grounds that the STC lacked jurisdiction. The hearing officer reasoned the STC's jurisdiction is derivative of the BOE's jurisdiction. Thus, since the local BOE has no authority over issues of inter-county equalization, the STC also lacks authority to address issues of inter-county equalization in an appeal from the decision of a local BOE. In August of 2014, Landowners filed an Application for Review of the hearing officer's decision, which was affirmed by the STC in December of 2014.

In their orders dismissing the Landowners' petitions, both the hearing officer and the STC cited the uniformity clause of the Missouri Constitution, which states that:

> Taxes may be levied and collected for public purposes only, and shall be uniform upon the same class or subclass of subjects *within the territorial limits of the authority levying the tax*.

3

MO. CONST. art. X, § 3 (emphasis added). The STC interpreted this clause to mean that "the authority levying the tax" was the "governing body of the county," and that the "territorial limits" is therefore the boundaries of the county itself. The STC then concluded, in the context of a multi-county taxing jurisdiction, the uniformity clause only requires equalization of assessment within the limits of each county and not within the entire tax district spanning multiple counties.

In January of 2015, the Landowners filed a petition in the Circuit Court of St. Louis County naming both the BOE and the STC as respondents, alleging five counts: judicial review of a contested case, alleging that the BOE and the STC both erred in dismissing their appraisal appeals (Count I); declaratory judgment, asking the court to declare that the Landowners' assessments are discriminatory and that the STC failed to perform timely and accurate inter-county equalization (Count II); mandamus, asking the court to order the STC to perform inter-county equalization and reduce Landowners' assessments to make them uniform with other properties in the multi-county taxing jurisdictions (Count III); judicial review of a non-contested case, alleging that the STC failed to perform timely and accurate inter-county equalization (Count IV); and certiorari, requesting that the court review the record for errors that cannot otherwise be reached by appeal or writ of error (Count V).

The BOE and the STC each filed motions to dismiss the Landowners' petition. The issues were briefed by all parties and a hearing was held, though no transcript was made of the oral arguments. The circuit court granted the motions to dismiss on the grounds that the Landowners' petition failed to state a claim, dismissed the petition with prejudice, and entered judgment in favor of the BOE and the STC on all counts. This appeal follows.

4

Landowners raise three points on appeal. In Point I, Landowners argue that the circuit court erred in dismissing Count I, seeking judicial review of a contested case for failure to state a claim because "the territorial limits of the taxing authorities in this matter span multiple counties, and the [STC] had a duty to equalize the taxes assessed against the plaintiffs' properties within the territorial limits of the authorities levying the tax, instead of dismissing the appeals." In Point II, Landowners argue that the circuit court erred in dismissing Count IV, seeking judicial review of a non-contested case for failure to state a claim because "the action of the [STC] in performing inter-county equalization for the 2011 tax year constitutes a decision of an administrative body which is not subject to administrative review and which determined the legal rights, duties or privileges of the [Landowners] within the meaning of [RSMo] § 536.150 [], and there is no other provision for judicial review of that [STC] action." In Point III, Landowners argue that the circuit court erred in dismissing Count II, seeking a declaratory judgment because "the action of the [STC] dismissing the [Landowners]' appeals, together with the failure of the [STC] to perform accurate inter-county equalization for the 2011 tax year, have created a justiciable controversy between the parties concerning the issues of whether the assessments for the [Landowners'] properties are discriminatory and not uniform, and the [Landowners] have no adequate remedy at law."

**DISCUSSION**

The fundamental argument at the heart of each of Landowners' points on appeal is that the STC erroneously interpreted Article X, § 3 of the Missouri Constitution when it concluded that "the territorial limits of authority levying the tax" in the context of a multi-county taxing

jurisdiction is "the governing body of the county," rather than the boundaries of the school and fire districts levying the taxes.

Before addressing the merits, however, we must address this Court's jurisdiction. The Missouri Constitution grants exclusive appellate jurisdiction to the Supreme Court of Missouri "in all cases involving . . . the construction of the revenue laws of this state." MO. CONST. art. V, § 3; *Twelve Oaks Motor Inn v. Strahan*, 96 S.W.3d 106, 108 (Mo. App. S.D. 2003). When a case involving the construction of the revenue laws of the state is appealed to this Court, our Constitution requires the case to be transferred to the Supreme Court. MO. CONST. art V, § 11; *see ABB C-E Nuclear Power, Inc. v. Dir. of Revenue*, 215 S.W.3d 85, 86-87 (Mo. banc 2007) (transferred from the court of appeals under MO. CONST. art. V, § 11).

"Revenue law" is defined as a law that "directly creates or alters an income stream to the government . . . establishes or abolishes a tax or fee, changes the rate of an existing tax, broadens or narrows the base or activity against which a tax or fee is assessed, or excludes from or creates exceptions to an existing tax or fee." *Alumax Foils v. City of St. Louis*, 939 S.W.2d 907, 910 (Mo. banc 1997); *see also Kuyper v. Stone Cnty. Comm'n*, 838 S.W.2d 436, 437-38 (Mo. banc 1992) (defining "revenue laws" as laws that "authorize a tax, excise, custom, duty or other source of income"). In order to give the Supreme Court exclusive jurisdiction, the "revenue law must be directly and primarily concerned, not merely indirectly or as an incident." *Kelly v. Hanson*, 931 S.W.2d 816, 817-18 (Mo. App. W.D. 1996).

"Construction" of a law is defined as "determining the meaning and proper effect of language by a consideration of the subject-matter and attendant circumstances in connection with the words employed." *Hermel, Inc. v. State Tax Comm'n*, 564 S.W.2d 888, 897 (Mo. banc 1978); *see also Ewing v. Springfield*, 449 S.W.2d 681, 684 (Mo. App. S.D. 1970) (defining the term

6

"construe" as "determin[ing] the meaning and proper effect [of a law]"). However, a case does not involve the construction of a revenue law if the law at issue has already been interpreted by the Supreme Court, and the appellate court can dispose of the issue by merely applying that construction of the law to the facts of the case. *Twelve Oaks*, 96 S.W.3d at 108-09; *Equitable Life Assurance Soc'y of U.S. v. State Tax Comm'n*, 852 S.W.2d 376, 383 (Mo. App. E.D. 1993).

At issue in this case are two constitutional provisions and at least one statute concerning procedures for ensuring uniform taxation of property within this state, specifically Article X, §§ 3 and 14 of the Missouri Constitution and RSMo § 138.380.[1] Under the Missouri Constitution, all taxes levied and collected must be uniform as applied to each class or subclass of property "within the territorial limits of the authority levying the tax." MO. CONST. art. X, § 3 ("uniformity clause"). The Missouri Constitution also mandates the creation of a commission charged with the duties: (1) to equalize the assessments between counties ("inter-county equalization"); (2) to hear appeals from local boards of equalization in individual cases; (3) to correct any assessment shown to be unlawful, unfair, arbitrary or capricious; and (4) to perform any other duties prescribed by law. MO. CONST. art. X, § 14. The General Assembly gave effect to these constitutional requirements by creating the STC and charging it with the duty to "equalize the valuation of real and tangible personal property among the several counties in the state" by either adding to or deducting from the valuation of any property that has been undervalued or overvalued, in order to bring the property to its true value. RSMo § 138.380.

We find that these constitutional and statutory provisions constitute "revenue laws" within the meaning of Article 5, § 3 of the Constitution. These laws concern the requirement that taxes be uniformly and equally applied and the procedures for ensuring this uniformity, which is

---

[1] All statutory references are to RSMo 2000, cumulative supplement 2016 unless otherwise indicated.

a core part of our state's revenue laws. Moreover, the constitutional requirement that taxes be uniformly applied and the statutory duty of the STC to conduct inter-county equalization have the effect of "chang[ing] the rate of an existing tax" because the procedure by which the STC equalizes assessments is by raising or lowering valuations, which directly alters the amount of tax paid by the owners of those properties. *See Alumax Foils*, 939 S.W.2d at 910. Moreover, the Supreme Court has consistently held that the issue of inter-county equalization concerns the construction of the revenue laws of the state and is within the exclusive jurisdiction of the Supreme Court of Missouri. *May Dep't Stores Co. v. State Tax Comm'n*, 308 S.W.2d 748, 755 (Mo. 1958); *see also Foster Bros. Mfg. Co. v. State Tax Comm'n*, 319 S.W.2d 590, 591 (Mo. 1958). In holding that the laws at issue in this case are revenue laws within the meaning of Article 5, § 3 of the Constitution, we are cognizant of the fact that the Supreme Court has somewhat circumscribed its exclusive jurisdiction in this area. *Kuyper*, 838 S.W.2d at 437-38 (holding that laws concerning expenditure of taxes are not revenue laws and overruling a line of cases holding to the contrary).

We further find that these revenue laws are directly at issue in this case. Each of Landowners' points on appeal is dependent on findings that the uniformity clause of the Missouri Constitution requires taxes within a multi-county taxing jurisdiction to be uniform within the entire tax district when it spans multiple counties and that the STC is required to ensure this uniformity as part of its duty to conduct inter-county equalization. If the county is considered the authority levying the taxes at issue in this case, then the Landowners' claims must fail because they have conceded that their assessments are uniform within their own county. On the other hand, if the school and fire districts are considered the authorities levying the taxes, then the Landowners have a solid legal foundation for arguing that the undervaluation of properties in

8

another county but within the same multi-county taxing jurisdiction violates the uniformity clause.

This case requires construction of these revenue laws because the Supreme Court of Missouri has not previously interpreted the uniformity clause as applied to a multi-county taxing jurisdiction. The meaning of the phrase "authority levying the tax" is directly at issue in this case. However, the phrase is not specifically defined in the Missouri Constitution, and there are no cases from the Supreme Court of Missouri interpreting this phrase in the context of a multi-county taxing jurisdiction. Therefore, this is a case of first impression and there is no precedent to apply. *See Hermel*, 564 S.W.2d at 897 (transfer is not required when the revenue law at issue has already been construed and an appeal can be disposed of by the application of that construction); *Knowlton v. Ripley Cnty. Memorial Hosp.*, 743 S.W.2d 132, 133 (Mo. App. S.D. 1988) (same).

None of the cases cited by the STC to support its interpretation of the uniformity clause provide an interpretation of the uniformity clause by the Supreme Court. In its order dismissing the Landowners' appeal as well as the order affirming that decision, the STC stated that "[t]he governing body of the county is the taxing authority" and that "the county – not the state – was the 'territorial limits' expressed in Article X, Section 3 of our Constitution." In reaching this conclusion, the STC cited *Westwood Partnership v. Gogarty*, 103 S.W.3d 152, 160 (Mo. App. E.D. 2003) (citing *Beatty v. State Tax Comm'n*, 912 S.W.2d 492 (Mo. banc 1995)). However, neither of these cases offers an interpretation of the meaning of the uniformity clause of Article X, § 3 of the Missouri Constitution.

In *Westwood Partnership*, this Court stated "[t]he territorial limit of the authority levying the tax in question under Section 137.016.1(1) is each county, not the State of Missouri."

*Westwood Partnership*, 103 S.W.3d at 160. However, since *Westwood Partnership* was a case from the Eastern District Court of Appeals, any interpretation of the uniformity clause lacked sufficient authority unless based on an interpretation originally offered by the Supreme Court of Missouri. *See Twelve Oaks*, 96 S.W.3d at 108-09 (the appellate court has jurisdiction and transfer is unnecessary only when there is Supreme Court precedent interpreting the law, which the appellate court may apply).

In *Beatty*, the Court offered no such interpretation. *Beatty*, 912 S.W.2d at 496. Although the Court stated "the governing body of the county sets the annual tax levy rate," this statement was not part of the Court's holding, but rather dicta constituting an introductory "general discussion of the manner in which real property is taxed in Missouri." *Id*. In fact, the Court did not even discuss the uniformity clause in its opinion. The issue in *Beatty* was whether a statute was unconstitutionally retrospective in operation when it redefined how property is classified for the purposes of property tax assessment. *Id*. at 494.

Moreover, even if the statement in *Westwood Partnership* was supported by Supreme Court precedent, it still offers an insufficient interpretation because the facts involved a law that only applied within the territorial limits of a single county, rather than a multi-county taxing jurisdiction where the taxing authority spanned multiple counties, as exists in this case. *Westwood Partnership*, 103 S.W.3d at 155. Thus, we find that neither *Beatty* nor *Westwood Partnership* offer an interpretation of the uniformity clause as applied to a multi-county taxing jurisdiction. Consequently there is no Supreme Court precedent to apply, and any interpretation of the clause would require this Court to construe the uniformity clause, which we lack jurisdiction to do. *ABB C-E Nuclear Power, Inc. v. Dir. of Revenue*, No. WD 65820, 2006 Mo. App. LEXIS 997, at *4 (Ct. App. June 30, 2006) ("In the absence of Missouri Supreme Court

10

precedent to apply, this case requires construction of [a revenue law], which we lack jurisdiction to do."), *transferred*, 215 S.W.3d 85 (Mo. banc 2007).

We further note that both Appellant and Respondent have conceded in their briefs or at oral argument that transferring this case to the Supreme Court would be appropriate given the importance and general interest of the issues involved, pursuant to our authority under Article V, § 10 of the Constitution and Rule 83.02. We find, however, that transfer is not only appropriate but required under Article V, § 3 of our Constitution because the Supreme Court has exclusive jurisdiction over cases involving the construction of the revenue laws of the state.

We hold that resolution of the issues involved in this appeal involves the interpretation and construction of two constitutional provisions and at least one statute concerning procedures for ensuring uniform taxation of property within this state, specifically Article X, §§ 3 and 14 of the Missouri Constitution and RSMo § 138.380.

## CONCLUSION

The case is hereby transferred to the Supreme Court of Missouri pursuant to Article V, § 11 of the Missouri Constitution.

_____
Angela T. Quigless, P.J.

Robert G. Dowd, Jr., J., and
Lisa Van Amburg, J., Concur.