STATE ex rel. UNION ELECTRIC COMPANY, a corporation, et al., Appellants,

v.

Gerald H. GOLDBERG, Missouri Director of Revenue, Respondent.

No. 60889.

Supreme Court of Missouri, En Banc.

April 10, 1979.

Edward J. Bust, Viburnum, W. Oliver Rasch, Farmington, Cullen Coil, Jefferson City, for appellants.

John D. Ashcroft, Atty. Gen., J. Kent Lowry, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

This mandamus suit was brought in the Cole County Circuit Court pursuant to § 536.150 [1] to review the Director of Revenue's denial of appellants' claim for a sales tax refund. The question presented in this case is whether appellant Union Electric Company's sale of electricity to appellant Meramec Mining Company is covered by § 144.030.3(11), RSMo 1969, which exempts from Missouri sales tax:

> "(11) Electrical energy used in the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used;"

The circuit court held that this sale of electrical energy was not exempt, and this appeal followed. We have appellate jurisdiction because construction of a revenue law is involved. Mo.Const. art. V, § 3. We reverse.

The facts are stipulated. From June 1, 1976 to June 30, 1977 Meramec engaged in mining iron ore in Washington County, Missouri. Ore (rock bearing iron) and waste rock (necessary to get to the ore) were drilled and blasted at depths underground varying from 1400 feet to 2400 feet. The ore and rock were then crushed to approximately six inches in size to facilitate handling and removal. This mixture was carried to the shaft by conveyor belt, loaded into skips, and hoisted to the surface where it was placed in bins.

---

1. Section 536.150 RSMo Supp.1975 provides for review by injunction or original writ of administrative decisions not otherwise subject to judicial review.

Above ground the ore was removed from the bins and subjected to a process called beneficiation. Iron minerals were separated from the ore by grinding and magnetic separation. These were further processed by thickening, filtering, mixing with bentonite and shaping into balls of ⅝ inch or less diameter which were fired and hardened in a pellet furnace. The fired pellets were stocked for shipment to steel mills. Non-magnetic minerals were processed by flotation and gravity concentration to produce pyrite, apatite and hematite.

The total cost of electrical energy used in the combined operations of mining and processing did not exceed ten percent of the total cost of production, exclusive of the cost of electrical energy, but the cost of electrical energy used in the beneficiation process did exceed ten percent of the total cost of that process, exclusive of the cost of electrical energy. Union Electric's bill to Meramec included sales tax on the entire amount of energy sold, which was paid over to the Department of Revenue. Appellants now seek to compel refund of $51,909 which was paid as sales tax on electrical energy used in the beneficiation process. They claim that § 144.030.3(11) provides separate exemptions for electricity used in separate parts of Meramec's operations. Respondent contends that the statute allows an exemption only when the cost of electricity used in various stages of producing a product exceeds ten percent of the *total* cost of production, and that it does not allow appellants to split a production process into stages and seek an exemption for one stage alone.

Section 144.030.3(11) has not been previously construed on this issue. Respondent reminds us that this is a statute providing a tax exemption, and it therefore should be construed strictly against the party claiming the exemption. While this is an accepted canon of statutory interpretation, it should not be applied to force a conclusion that the legislature intended something other than what is expressed in the plain language of the statute. *American Bridge Co. v. Smith,* 352 Mo. 616, 179 S.W.2d 12, 16 (1944). In construing a statute "[t]he primary rule is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to take the words used in the statute in their plain and ordinary meaning." *State ex rel. Dravo Corp. v. Spradling,* 515 S.W.2d 512, 517 (Mo.1974). The language of the statute must be examined with this principle in mind.

We think the legislature's use of the terms "primary" and "secondary" is significant. The use of various other words to refer to these terms complicates construction of the statute, but its meaning is clarified when a neutral term is substituted. The statute may be paraphrased as follows:

Electrical energy used in the actual primary [stage] *or* electrical energy used in the actual secondary [stage], if the total cost of electrical energy so used exceeds ten percent of the total cost of production, *either primary or secondary,* exclusive of the cost of electrical energy so used; (emphasis supplied)

This language clearly shows an intention to exempt electrical energy used in either a primary *or* a secondary stage of production. Respondent argues that the cost of electricity must exceed ten percent of the total cost of production in all stages of production added together. This construction ignores the phrase "either primary or secondary" which follows immediately after the reference to total cost of production, and would render meaningless the legislature's division of production into primary and secondary stages. We should not assume the legislature intended these words to have no meaning. *State ex rel. Smith v. Atterbury,* 364 Mo. 963, 270 S.W.2d 399 (banc 1954).

This court has had occasion to define "mining" as used in another subsection providing an exemption under § 144.030.3.[2] In

2. Section 144.030.3(4) exempts from sales tax "[m]achinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or

*West Lake Quarry & Material Co., Inc. v. Schaffner,* 451 S.W.2d 140 (Mo.1970) the issue was whether certain machinery and equipment was used in "manufacturing, mining or fabricating a product" so as to qualify for a sales tax exemption. West Lake blasted rock from the ground, reduced it in size and hauled it to a hopper. The rock was then put through a screening process, after which it was crushed into several sizes and then sorted by size. The court concluded that the operation of removing the rock from the ground, breaking it up and hauling it to the crusher was mining. The blasting, crushing and hauling activities are virtually the same as those of Meramec in this case. We hold that in drilling and blasting rock, and crushing and hauling it to bins, Meramec was engaged in mining.

■ Processing has been defined elsewhere as "a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject matter to be transformed and reduced to a different state or thing." *Miller v. Electro Bleaching Gas Co.,* 276 F. 379, 381 (8th Cir. 1921), *quoting from Cochrane v. Deener,* 94 U.S. 780, 788, 24 L.Ed. 139 (1876). This is similar to the definition in Webster's Third New International Dictionary, 1808 (1976), which gives illustrations as follows: processing cattle by slaughtering them; processing milk by pasteurizing it; processing grain by milling; processing cotton by spinning. We hold that the flotation and gravity concentration used to produce the non-magnetic metals, and the thickening, filtering, mixing, shaping and firing of the iron ore can be labeled as processes within the meaning of § 144.030.3(11).[3]

■ We are aware that the statute may be more difficult to apply to other factual situations because of the legislature's inartful choice of overlapping terms, i. e., the use of the words "manufacturing, processing, compounding, and fabricating," the meaning of the latter three ordinarily being included within the meaning of the more general and inclusive term "manufacturing," and the use of the word "processing" with reference to both primary and secondary stages of production. We do not attempt to address such problems at this time. In the case before us we have a company which clearly is engaged in the primary mining and secondary processing of a product. We hold that Meramec is entitled to an exemption from sales tax for the electricity used in the secondary beneficiation process. In ruling that an exemption is not available unless the cost of electricity exceeds ten percent of the total cost of all stages of production, the trial court erroneously applied the law.

We reverse and remand to the circuit court with instructions that it issue its writ of mandamus to the respondent Director of Revenue directing him to refund to relators the sum of $51,090.

MORGAN, C. J., and DONNELLY, RENDLEN and SIMEONE, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption;"

**3.** We realize that in *West Lake* activities performed after *mining* were classified as manufacturing rather than processing. However, the exemption being construed applied only to manufacturing, mining and fabricating; processing was not under consideration. We do not feel these terms are mutually exclusive. In states with similar tax exemption statutes processing and manufacturing are sometimes treated as equivalents and are sometimes distinguished. *See* Annot., 17 A.L.R.3d 7, § 4 (1968). In *West Lake* we defined manufacturing as "a process [which] takes something practically unsuitable for any common use and changes it so as to adapt it to such common use . . . ." 451 S.W.2d at 143. This term is an extremely broad one, which could encompass most of the terms used by the legislature in § 144.030.3(11), such as processing, compounding or fabricating. *See, e. g., Wilson & Co., Inc. v. Department of Revenue,* 531 S.W.2d 752 (Mo.1976) (manufacturing includes the processing of hogs into meat and other products).

BARDGETT, Judge, dissenting.

I respectfully dissent. This case calls for an interpretation of a taxing statute of this state in which the taxpayer, Union Electric, seeks a refund under claim of exemption from sales taxes pursuant to sec. 144.030.-3(11), RSMo 1969, which exempts from Missouri sales tax: "Electrical energy used in the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used".

As noted the principal opinion, a statute providing a tax exemption is to be strictly construed against the party claiming the exemption.

I do not agree with the paraphrasing of the statute in question as set forth in the principal opinion as I believe that the paraphrasing inserts words into and leaves words out of the statute and thereby alters the meaning of it.

In my opinion, the clear intent of the statute was to include within the ambit of the exemption a variety of industrial activities conducted by any given company. The use of the word "or" was for the purpose of making clear that a company, in order to avail itself of this exemption, need not be engaged in all of the activities described in the statute but the company's activities could encompass one or two but not all of them and the company would still be entitled to the exemption. However, I do not believe that this statute is subject to the construction which allows a company to have the exemption by simply administratively separating one of its activities from another. The subsection in issue here became part of the statute in 1967 and there has been no showing that the contemporaneous interpretation of this statute ever allowed this exemption to apply in the manner set forth in the principal opinion.

In other words, I think the disjunctive word "or" was used here so as to include more companies within the ambit of the exemption than would have been included had the conjunctive word "and" been employed, but I do not believe that the legislature intended that a company whose total cost of electrical energy used in the "primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used", would be entitled to obtain the exemption provided for in this section by utilizing as "its total cost of production" a cost factor that applied to only one of the total production activities, such as mining. I believe that the meaning of the term "total cost of production" means the cost involved in the company's activities from getting the ore out of the ground to the state of the product, whatever it may be, when it leaves that company.

For the foregoing reasons, I dissent and would affirm the judgment of the circuit court.