**WETTERAU, INCORPORATED, d/b/a Wetterau Food Distribution and Common Item Warehouse, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. 74712.

Supreme Court of Missouri, En Banc.

Dec. 18, 1992.

Rehearing Denied Jan. 26, 1993.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for appellant.

Garry McCubbin, Dennis T. McCubbin, Clayton, for respondent.

ULRICH, Judge.

The issue presented in this appeal from the Administrative Hearing Commission is whether maintaining frozen meat in its frozen state constitutes "processing" as intended by § 144.030.2(12), RSMo Supp. 1991. The statute exempts from sales tax electrical energy used in the actual primary processing or secondary processing or fabricating of a product if the total cost of electrical energy so used exceeds ten percent of the total cost of production, exclusive of the cost of electrical energy used.[1] Maintaining frozen meat in its frozen state is not "processing" as intended by the statute. The decision of the Administrative Hearing Commission is reversed.

Wetterau, Incorporated, d/b/a Wetterau Food Distribution and Common Item Warehouse (Wetterau), filed applications for electrical energy direct pay authorizations for the years 1987, 1988 and 1989. The Director of Revenue denied the applications, contending that Wetterau was not processing foods but was maintaining food in the condition in which Wetterau received it. When the applications were denied, Wetterau filed its complaint with the Administrative Hearing Commission seeking review of its applications. The Administrative Hearing Commission conducted a hearing and issued its findings of fact and

---

1. The Director of Revenue does not contest that the electrical energy cost used by Wetterau to maintain frozen meat in its frozen state exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used. § 144.030.2(12).

conclusions of law. The commission ruled that Wetterau was entitled to the electrical pay authorization exemption for the years 1987, 1988 and 1989. The Director of Revenue seeks review.

Wetterau stores and maintains frozen and refrigerated food as a business. Wetterau receives frozen meat, maintains it in its frozen state, and transfers it to other businesses, which distribute the meat to consumers. Occasionally, Wetterau purchases unfrozen food and freezes it. Wetterau also refrigerates fruit and vegetables and operates "banana rooms" where it maintains bananas in a green state by refrigeration and controlled humidity. When desired, the natural ripening of the green bananas stored by Wetterau is accelerated by introducing heat and ethylene gas. However, the relatively small amount of unfrozen food received by Wetterau that the company freezes is a very small part of its business, and the amount of electrical energy purchased to freeze unfrozen meat or to maintain or refrigerate other unfrozen foods is not in evidence.

Wetterau's evidence at trial established that meat and other foods decay or decompose naturally as time elapses. Meat spoils when bacteria in contact with the meat grow and multiply. The increased amount of bacterial metabolic waste causes meat to spoil. Enzymes within the live animal's tissue gradually break down the meat tissue after the animal is slaughtered, contributing to spoilage. When food spoils, the decomposition is irreversible.

Freezing is one mechanism used to arrest the natural spoiling process. To the extent possible, freezing preserves meat in its prefrozen state. To be effective, freezing must be constant. Spoilage occurs when frozen food attains an elevated temperature. The freezing process removes heat from the food being frozen. The food's reduced temperature must be maintained continuously to inhibit its natural degradation.

Section 144.030.2(12), RSMo Supp.1991, exempts from state and local sales and use taxes electrical energy used in the primary or secondary processing of a product if the cost of the electrical energy exceeds the stated statutory amount. The statute specifically states that the exemption applies to taxes incurred for:

> Electrical energy used in the actual primary manufacture, **processing**, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used; ....

§ 144.030.2(12) (emphasis added).

■■■ Tax exemptions are strictly construed against the party claiming the exemption. *GTE Automatic Elec. v. Director of Revenue*, 780 S.W.2d 49, 50 (Mo. banc 1989). Wetterau has the burden of proving entitlement to tax exempt status. *See Sunday Sch. Bd. of the Southern Baptist Convention v. Mitchell*, 658 S.W.2d 1, 4 (Mo. banc 1983). However, to effectuate the legislative intent, the "reasonable, natural and practical interpretation in light of modern conditions" is applied to the statute. *Barnes Hosp. v. Leggett*, 646 S.W.2d 889, 893 (Mo.App.1983). The Administrative Hearing Commission's decision will be affirmed "if [the decision is] supported by the law and competent and substantial evidence on the whole record, and ... [if the decision is] not clearly contrary to the reasonable expectations of the General Assembly." *L & R Egg Co. v. Director of Revenue*, 796 S.W.2d 624, 625 (Mo. banc 1990); *see also*, § 621.193, RSMo 1986.

■■■ Both parties propose definitions for the word "processing" within section 144.030.2(12). Wetterau advocates a more inclusive definition. Wetterau proposes "processing" means to subject an item to some activity in order to produce a certain result, not necessarily to transform or fundamentally change the item processed. The Director of Revenue advocates a more restrictive definition of the word "processing" that would require transformation or reduction of an item to a different state or thing.

The Supreme Court of Iowa considered whether freezing and refrigeration of food constitutes "processing" under an Iowa exemption statute in *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Comm'n*, 81 N.W.2d 437 (Iowa 1957). The court considered whether a company that conducted a freezing and cold storage business was entitled to exemption from sales tax on electricity on the ground that the electricity used by the company was "used in the processing of tangible personal property" within the meaning of the Iowa sales tax law. *Id.* at 438. The court determined that "processing" meant subjecting "products to special treatment in preparation for the market," and transforming them to a different state or condition. *Id.* at 440–41. The court determined that after food was "hard" frozen, maintaining it in its frozen state was not processing within the meaning of the statute. *Id.* at 441–42.

This Court previously defined processing as "a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject matter to be transformed and reduced to a different state or thing." *State ex rel. Union Electric Co. v. Goldberg*, 578 S.W.2d 921, 924 (Mo. banc 1979). The operations performed by the Meramec Mining Company in transforming mined ore into hardened iron/bentonite pellets and in separating non-magnetic minerals from the ore constituted processing within the meaning of the exempting statute. *Id.*

Consistent with the rationale of the Iowa Supreme Court in *Fischer Artificial Ice & Storage Company* and this Court's definition of "processing" in *Union Electric*, maintaining frozen meat in a frozen state does not transform or reduce the meat to a different state and is not "processing" as the word is used in section 144.030.2(12). The meat is frozen when received by Wetterau, and it is kept by the company in the same frozen state. Wetterau maintains frozen meat in the same status that it receives it. Wetterau does not process the frozen meat after it receives it, and Wetter-

au is not, therefore, entitled to the statutory exception sought from the Director of Revenue for years 1987, 1988 and 1989.[2]

The decision of the Administrative Hearing Commission is reversed.

ROBERTSON, C.J., and COVINGTON, HOLSTEIN and THOMAS, JJ., concur.

PRICE, J., dissents in separate opinion filed.

LIMBAUGH, J., concurs in opinion of PRICE, J.

BENTON, J., not sitting.

PRICE, Judge, dissenting.

I dissent from the majority's opinion because it fails to give effect to the totality of § 144.030.2(12), RSMo 1986. The statute exempts from sales tax not only expenditures for "electrical energy used in the actual primary manufacturing, processing, compounding, mining or producing of a product", but also for "electrical energy used in the actual secondary processing or fabricating of the product." While a fair question may exist as to whether maintaining food in a frozen state is "processing", the inclusion in the statute of the term "secondary processing" requires that the decision of the Administrative Hearing Commission be affirmed.

The record below establishes that the freezing of food is a necessary process for wholesale and retail sales. The freezing process arrests natural spoilage and, as the majority opinion notes, the "foods' reduced temperature must be maintained continuously to inhibit its natural degradation."

The initial freezing of food has been universally recognized to constitute processing. *See In re Taxes, Hawaiian Pineapple Co.*, 45 Haw. 167, 363 P.2d 990, 1004 (1961); *State Tax Com'n v. Haener Bros., Inc.*, 121 Idaho 741, 828 P.2d 304, 312 (1992); *Dept. of Revenue v. Cave Stone, Inc.*, 427 N.E.2d 922, 923 (Ind.App.1981); *Manning's Famous Foods, Inc., v. Com-*

2. Whether initially freezing food constitutes processing within the meaning of section 144.- 030.2(12) is not determined.

*mission*, 3 Or.T.R. 249, 250 (Or.Tax 1968). Maintaining food in a frozen state presents a more difficult issue. While maintenance of the frozen state does not transform the food to a different state, it does maintain or continue the food's existence in a state that is not natural. The continuation of the frozen state is as important and necessary to the preservation process as is the initial freezing. In fact, the former "process" would be wholly useless and incomplete but for the subsequent maintenance.

The two courts that have addressed the issue of whether continued refrigeration is "processing" have decided it is not. *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Comm'n*, 81 N.W.2d 437, 441–2 (Ia.1957); *Warren v. Fink*, 146 Kan. 716, 72 P.2d 968, 970 (1937). They apparently draw a legal line between the initial hard freezing and the subsequent maintenance of the foods' frozen status, where I doubt that a practical one could exist.

We need not wrestle with this issue because our Missouri statute includes language not considered in either the Iowa or Kansas cases. Those cases are limited to consideration of the term "processing". Section 144.030.2(12) provides a broader exemption. It also exempts "secondary processing".

Black's Law Dictionary 1205 (6th ed. 1990) defines "process" as:

A series of actions, motions, or occurrences; progressive act or transaction; *continuous operation; method, mode or operation, whereby a result or effect is produced;* normal or actual course of procedure; regular proceeding, as, the process of vegetation or decomposition; a chemical process; processes of nature.... Process is mode, method or operation whereby a result is produced; and means to prepare for market or to *convert into marketable form.* [Emphasis added.]

Black's also defines "secondary" as "[o]f a subsequent, subordinate or inferior kind or class; generally opposed to 'primary'." *Id.* at 1351.

Accordingly, the Court must interpret the statute at issue so as to give effect to the express distinction between "processing" and "secondary processing" wherever such a distinction is indicated by a given factual situation. *State ex rel. Union Elec. Co. v. Goldberg*, 578 S.W.2d 921, 924 (Mo. banc 1979). "It is a well established presumption that the General Assembly did not intend for any part of a statute to be without meaning or effect. It is not presumed to have intended a useless act." *Sheldon v. Board of Trustees of the Police Retirement System*, 779 S.W.2d 553, 556 (Mo. banc 1989). I believe that the continued refrigeration required after the initial freezing of meat fits squarely into the statutory scheme that exempts electricity used in secondary processing from sales tax. I would affirm the decision of the Administrative Hearing Commission and allow the exemption.