**BHA GROUP HOLDING, INC., Respondent,**

v.

**Michael PENDERGAST, et al., Appellant.**

**No. WD 64454.**

Missouri Court of Appeals,
Western District.

Oct. 11, 2005.

Arthur Aaron Hogg, Kansas City, for Appellant.

Aaron Gold March, Kansas City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

This is a case of first impression. Jackson County, Jackson County Collector Michael Pendergast, and the Jackson County Deputy Director of Assessment (collectively the "County") appeal the trial court's decision that the property tax abatement under Mo.Rev.Stat. Section 353.110.1 [1] begins in the year a Chapter 353 redevelopment corporation acquires the property rather than the calendar year after the date of acquisition. The County argues that the abatement begins in the calendar year *following* the year in which the redeveloper acquires the property. BHA claims that the abatement applies to the tax on improvements for the entire year of acquisition, even though the redevelopment corporation did not acquire the property until December 18.

Because the terms in the statute do not require a delay in initiating the partial statutory abatement, we affirm.

## Facts

The parties stipulated to the operative facts and tried the case to the court. BHA Group Holdings, Inc. ("BHA") owns property in Raytown, Jackson County, Missouri, and has owned that property at all relevant times except briefly on December 18, 2001. BHA sought to redevelop the property and formed a separate Chapter 353 redevelopment corporation ("RDC") for that purpose. On May 1, 2001, the city of Raytown approved BHA's redevelopment plan and contract, which provided that the property would not be subject to assessment or payment of general ad valorem taxes on improvements to the property for a period of ten years after the date the RDC should acquire the property, congruent with the terms of Section 353.110.1. The agreement also provided that the tax benefit would inure to a transferee of the property as long as the transferee complied with the provisions of the agreement. On December 18, 2001, the RDC acquired the property from BHA, triggering the acquisition date provision of the redevelopment plan, then promptly transferred it back to BHA.

At the time the redevelopment corporation acquired the property in December 2001, the County had already assessed the property, including its existing improvements, and billed BHA for 2001 taxes. BHA paid the taxes under protest and subsequently sued to recover for the amount of tax applicable to the improvements on the property. The trial court found for BHA, concluding that Section 353.110.1 prohibits the County from requiring payment of taxes on improvements to the land in the year of acquisition by the RDC, even though the taxes had already been assessed for the year. The County appeals.

## Standard of Review

In a court-tried case, the trial court's judgment will be affirmed on appeal unless

---

1. All statutory references are to Mo.Rev.Stat. (2000), unless otherwise indicated.

there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### Jurisdiction

 Preliminarily, we address our jurisdiction *sua sponte. Riverside–Quindaro Bend Levee Dist. v. Intercontinental Eng'g Mfg. Corp.,* 121 S.W.3d 531, 533 (Mo. banc 2003). The Missouri Supreme Court has exclusive appellate jurisdiction over cases involving the construction of revenue laws of this state. Mo. CONST. art. V, Section 3; *Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907, 910 (Mo. banc 1997); *Two Pershing Square, L.P. v. Boley,* 981 S.W.2d 635, 637 (Mo.App.1998). A revenue law "of this state" means one "the proceeds of which are deposited in the state treasury." *Alumax Foils,* 939 S.W.2d at 910; *Two Pershing Square,* 981 S.W.2d at 638. Because this case involves property taxes paid to the Jackson County treasury, not the state treasury, it does not involve the construction of a revenue law "of this state," and appellate jurisdiction is proper in this court. *Two Pershing Square,* 981 S.W.2d at 638.

### Discussion

*The History and Purpose of Chapter 353 Redevelopment*

Urban redevelopment under Chapter 353 has its roots in the new Constitution of 1945, which specifically allowed enactment of state and local laws to redevelop blighted property and authorized the use of eminent domain for that purpose. Mo. CONST. art. VI, Section 21. The new constitution also specifically provided for partial relief from taxation to encourage redevelopment. Mo. CONST. art. X, Section 7. From this constitutional authorization came first the statute authorizing the creation of Land Clearance for Redevelopment Authorities (LCRA's), Section 99.300 *et seq.,* and the far more uncommon Urban Redevelopment Corporations Law contained in Chapter 353.[2] Atypically for its time,[3] Chapter 353 looked not to public entities but to the private sector, induced by tax relief, as redeveloper of blighted areas. Redevelopment thus might not require direct public funds or even public bonds, and the public authority was permitted to lend its eminent domain power to private developers.

Despite its long history in Missouri law there has been little specific litigation and appellate analysis of the specifics of how tax abatement works under Chapter 353. We are advised by counsel, but without reference either to facts in the record or to legal authority, that the interpretation of when the abatement begins has been exactly opposite in Kansas City and St. Louis, with Kansas City delaying abatement until the year after the RDC's acquisition, and St. Louis beginning abatement

---

**2.** For a thorough and interesting history, *see* Gary H. Feder, *Legal Outlook for Chapter 353 Development Projects in the 1990's,* 48 J. Mo. BAR 351 (1992).

**3.** Chapter 353 remains rare in its scope and approach to redevelopment of blighted property. Richard A. King, *The Continuing Battle to Curb Urban Blight and the Use of Economic Activity Taxes,* 51 J. Mo. BAR 332, (1995). Only Illinois has a statute, enacted in 2005, with language substantially similar to Chapter 353. 315 ILL. COMP. STAT. ANN. 20/15–5 (2005). Chapter 353 serves as part of "one of the broadest palettes of community development tools in the country." Joseph G. Lauber, *Public–Private Partnership in Community Development: Applying Constitutional Standards for Implementing the Missouri Community Improvement District Act,* 59 J. Mo. BAR 80 (2003).

in the year of acquisition.[4] Under Chapter 353, a blighted property which has been approved for private redevelopment by a private corporation receives a tax abatement for a specified number of years on the value of the *improvements* to the land. The property remains taxed, however, based upon the value of the *land,* exclusive of improvements such as buildings. In many cases, the year in which abatement begins may make little practical difference because there may be no existing improvements on the land, or any improvements that do exist may be so blighted as to have minimal assessed value. In this case, however, BHA had an existing office building of considerable value on the property, incurring about $80,000 per year in real estate taxes. Thus, whether the abatement begins in 2001 or 2002 is obviously of importance to the RDC, which seeks to use the 2001 tax savings immediately in the redevelopment, and to the County, which stands to lose substantial tax revenue.

We look to the legislature's choice of language in the statute for the answer to the question whether abatement begins in the year of—or the year after—acquisition. The relevant portion of Section 353.110.1 reads as follows:

> Once the requirements of this section have been complied with, the real property of urban redevelopment corporations acquired pursuant to this chapter shall not be subject to assessment or payment of general ad valorem taxes ... for a period not in excess of ten years after the date upon which such corporations become owners of such real property, except to such extent and in such amount as may be imposed upon such real property during such period measured solely by the amount of the

assessed valuation of the land, exclusive of improvements ....

## I. Construction of Section 353.110.1

### a. The "plain" language

■■ In its first point on appeal, the County argues that the plain language of Section 353.110.1 requires delaying initial abatement until the next calendar year. In construing the statute, we seek to effectuate the legislature's intent by applying the plain and ordinary meaning of statutory terms. *Maudlin v. Lang,* 867 S.W.2d 514, 516 (Mo. banc 1993). Furthermore, "significance and effect should, if possible, be attributed to every word, every phrase, sentence and part [of the statute], and words or phrases may be stricken out only in extreme cases." *State ex rel. Smith v. Atterbury,* 364 Mo. 963, 270 S.W.2d 399, 404 (1954).

The County's position, though we decline to adopt it, is better understood in light of the taxation process for real property in Missouri. The Missouri Supreme Court summarized that process in an opinion that merits extensive quotation:

> The determination of the amount of tax liability that attaches to a particular parcel of real property consists of two processes: the assessment of the property and the levying of the tax.
>
> Assessment is a process by which the assessor identifies property by parcel and owner, values it, classifies it[,] and lists it so that taxing authorities can apply their tax levies. [*See* Section 137.115.] Under [section 137.080], assessment is a continuing process "which commences on the first day of January." The assessor has until May 31 of the tax year to submit the "assessor's book" to

---

4. When enacted, Chapter 353 was limited to cities with a population of at least 350,000, but that restriction eroded through amend-ments, so that the statute currently imposes no size restriction.

the county governing body. [Section 137.245.] . . .

The second part of the taxing process, the levy, is the method by which the specific amount of tax due becomes known. After the assessor submits the assessor's book to the governing body of the county, the governing body of the county sets the annual tax levy rate. . . . [Section 137.055] requires the governing body to "fix the rate of taxes" after a public hearing "but not later than September twentieth of each year."

*Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 496–97 (Mo. banc 1995). The final step is payment, which is due on December 31 each year. Section 140.010. The County emphasizes the legal consequences to landowners of the first two parts of the process, as expressed in *Beatty:*

For purposes of ad valorem real property taxation, ownership of real property is determined on the first day of January.

"Every person owning or holding real property . . . on the first day of January, including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year."

[Section 137.075.] Real property is listed and its use for tax classification purposes is determined as of January 1 of a tax year. [Section 137.115.1.] On January 1 of each tax year, the taxing authorities obtain an inchoate tax lien in the real property. [Section 137.085.2; *Long v. City of Independence*, 360 Mo. 620, 229 S.W.2d 686, 690 (1950).] The inchoate lien becomes a fixed encumbrance "as soon as the amount of taxes is determined by assessment and levy." [Section 137.085.2.]

*Beatty,* 912 S.W.2d at 497.

Because Section 137.075 attaches tax liability to the owner of property as of January 1, the County argues, BHA became immutably liable for 2001 taxes, including taxes for the existing improvements on the property, on January 1, 2001. To find otherwise, says the County, would mean voiding the legal effect of the January 1, 2001, assessment, and voiding that assessment would contravene the plain meaning of Section 353.110.1 in that it abates taxes only "after" acquisition. In other words, the County argues that we should interpret "after" to mean the tax period (i.e., calendar year) after the date of acquisition. This, the County sees as fair because the acquisition here took place only a few weeks before the end of the year. However, the fairness argument cuts both ways: it would be equally unfair to deny an abatement until the following year to a redevelopment corporation who acquired property, for example, on the 2nd day of January, as it is to allow an abatement for property acquired December 18th. Thus, the County's fairness argument fails to support a universally applicable construction of the statute, one that is equally "fair" in all circumstances.

■ More importantly, because the statute specifically uses the term "calendar year" in some places but not in the part relevant here, the County's interpretation would require us to read the statute so that unlike terms have like meaning. The rule of construction is to the contrary: "When different terms are used in different subsections of a statute, it is presumed that the legislature intended the terms to have different meaning and effect." *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 251–52 (Mo. banc 2003). In a portion of Section 353.110.1 not directly at issue in this case, the legislature directed that the taxes due on the land during the abatement period should be determined by the taxes payable on the land "during the *calendar year* preceding the *calendar year* during which the corporation acquired ti-

tle." (Emphasis added.) We presume that the legislature used different terms— "ten *years*" after the RDC acquires the property (used to establish the initiation and duration of the abatement) versus "*calendar year*" (used to establish the taxes due on the land)—because it intended different things. The legislature could easily have expressed the interpretation sought by the County by stating that taxes should abate "for the ten calendar years" after the date of acquisition. But this the legislature did not do.

We think, furthermore, that BHA is correct that "after" must be read in conjunction with each prohibition in the statute, including the prohibition against making the owner subject to "payment." Stripped to the bone, the relevant part of Section 353.110.1 states,

> the real property of urban redevelopment corporations . . . shall not be subject to assessment *or payment* of general ad valorem taxes . . . after the date [of acquisition] . . . except [as] . . . measured solely by the amount of the assessed valuation of the land, exclusive of improvements[.]

(Emphasis added.) Stripped to the marrow, the statute states that an RDC *shall not be subject to payment*. Once the abatement period begins—after the date of acquisition—the statute plainly says the RDC shall not be subject to either assessment or payment of taxes on improvements to the property. The statute does not qualify "after" in any way; the statute neither requires nor promotes a period of delay before abatement begins. To find a requisite delay before abatement begins, we would have to add a qualification to "after" that the statute does not contain, and that the legislature showed, by not using "calendar year" in this part of the statute, that it did not intend. Although not strictly a canon of construction, courts avoid interpreting statutes to include qualifiers where "[s]uch an interpretation impermissibly adds language to the statute." *Kincade v. Treasurer of State of Mo.*, 92 S.W.3d 310, 312 (Mo.App.2002).

The 1986 amendments to the statute reinforce the conclusion that "after" in the statute means "right after" rather than "after the conclusion of the current tax year." In 1986, the legislature amended Section 353.110.1 to add the introductory clause "[o]nce the requirements of this law have been complied with" and the phrase "not in excess." L.1986, H.B. No. 1327, Section A. The latter, "not in excess," modifies the period of abatement to clarify it as a maximum, not a fixed period. The introductory clause, beginning with "once," clarifies that abatement may not begin until *all* requirements of the section have been complied with, rather than beginning during the RDC's process of meeting the section's requirements. We recognize that in statutory construction, "undefined words are given their plain and ordinary meaning as found in the dictionary in order to ascertain the intent of lawmakers." *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993). Use of the temporal "once" implies "as soon as, immediately, instantly." *The American Heritage College Dictionary* 953 (3d Ed.1993). We apply this plain and ordinary meaning to "once" in conjunction with "after" when construing Section 353.110.1. When the legislature amended the statute to specify that abatement may begin *once* "the requirements of this section have been complied with," it did not further qualify the beginning of the abatement period by indicating a delay until the next tax year. Therefore, the 1986 amendment to the statute reinforces our interpretation that abatement begins immediately after the RDC acquires the property.

That is not to say the statute does not *allow* a delay before abatement begins. Section 353.110.1 says an RDC "shall not be *subject to* assessment or payment." Applying the plain and ordinary meaning of the terms employed in the statute, we note that "subject to" means "being under the power or authority of another." *The American Heritage College Dictionary* at 1352. Therefore, "shall not be subject to" means an RDC cannot be compelled, under the taxing entity's power or authority, to pay the tax on improvements. But the statute does not say an RDC "shall not pay" the tax. It says they shall not be "subject to ... payment." The statute does not prohibit payment; rather, it prohibits the taxing authority from compelling payment. We therefore reject BHA's argument that no payment of taxes is *permitted* after the RDC's acquisition.

Furthermore, Section 353.110.1 bars the taxing authority compelling payment for a "period" of ten years. We must not read the statute so as to render any words as mere surplus; "we must presume that each word of a statute has separate and individual meaning[ ]." *State v. Bouse*, 150 S.W.3d 326, 335 (Mo.App.2004). The statute abates taxes, not for ten years, but for "a *period* not in excess of ten years." A "period" is an "interval of time." *The American Heritage College Dictionary* at 1016. And an "interval" is "the amount of time between two specified instants, events, or states." *The American Heritage College Dictionary* at 711. Under the statute, the interval can begin no sooner than the RDC meets all the statutory requirements, and ends no more than ten years after it begins. Section 353.110.1.

The County argues that the abatement period must conform to the calendar year tax assessment and payment schedule, because real estate taxes cannot be prorated in Missouri. The County cites no authority for the proposition that Missouri law disallows abatement of property taxes under these circumstances. The only authority we find, *Collector of Revenue Within and for the City of St. Louis v. Ford Motor Co.*, 158 F.2d 354, 358 (8th Cir.1946), likewise cites no Missouri law for that conclusion. We find one Missouri case, with no precedential value, that hints to the contrary. *St. Louis County v. Frank*, 916 S.W.2d 783 (Mo. banc 1996) (per curiam summary order). But we decline to speculate about the possibility of proration where neither party has argued for it.

b. Cases construing other tax abatement laws

"Statutes involving the assessment, levy[,] and payment of taxes should be construed in context with each other." *Lane v. Lensmeyer*, 158 S.W.3d 218, 226 (Mo. banc 2005). The trial court was guided by *20th & Main Redevelopment Partnership v. Kelley*, 774 S.W.2d 139 (Mo. banc 1989), which construed the Land Clearance for Redevelopment Authority Act (the "LCRA"), Section 99.300–.715. Like Chapter 353, the LCRA fosters redevelopment of blighted areas by, among other things, facilitating tax abatement for persons rehabilitating designated property. *Id.* In *20th & Main*, the Missouri Supreme Court found that the redeveloper was entitled to the assessment of its property at the value prior to the rehabilitation, even though the developer had not applied for the required tax-abatement certificate until after 90 percent of the rehabilitation was complete. 774 S.W.2d at 140–41. In holding that the taxes should be fixed at the pre-rehabilitation value, the Court noted, "The goal of the LCRA is to offer tax abatement in return for rehabilitation of blighted areas." *Id.* at 141.

We think Chapter 353 likewise aims to offer tax abatement in return for rehabilitation of blighted areas, and Section

353.110.1 states that the abatement should begin once the RDC meets the statutory requirements and acquires the property. Requiring an RDC to pay taxes on the improvements to land in the year of acquisition would counter the policy of the statute, because the RDC would face the dual financial burden of both the tax and the redevelopment cost. The legislature plainly intended an RDC to offset its redevelopment cost with the tax abatement.

As to the obligation to pay a tax because liability has attached through assessment, we think *State ex rel. Smith v. City of Springfield* illuminating, although it deals not with an RDC but with a government entity purchasing real property. 375 S.W.2d 84 (Mo. banc 1964). The *Springfield* court construed Article X, Section 6 of the Missouri Constitution and reaffirmed the principle that a government entity's tax exemption takes effect immediately upon acquisition of the real estate, notwithstanding the assessment and levy that concluded earlier in the same year. *Id.* at 90. *Springfield* resulted in the taxing authority not receiving the revenue it anticipated at assessment, *Id.* at 92, and we think the County's anticipated taxes here likewise must succumb to the legislature's policy preference for curing blight.

The County proposes that Section 137.085.1 intimates the proper timing of the abatement in Chapter 353. Section 137.085.1 reads in relevant part, "Government lands entered or located on prior to the first day of January shall be taxable for that year and every year thereafter. . . ." The County cites no case, and we find none, interpreting whether "that year" refers to the year of acquisition, or the year of the first day of January before which the acquisition takes place. In the absence of cases construing Section 137.085, that statute does not guide us in construing Section 353.110.1. We will not speculate as to the construction of a statute not at issue here. The County's first point is denied.

## II. Construing tax exemption statutes against the taxpayer

■ The County argues, citing *State ex rel. Union Elec. Co. v. Goldberg,* 578 S.W.2d 921, 923 (Mo. banc 1979), that a statute providing a tax exemption should be strictly construed against the taxpayer claiming the exemption. Although this accurately states the law, *Goldberg* also clarifies that construing a tax exemption statute against the taxpayer does not mean the taxpayer must lose in any dispute with the taxing authority: "While [construing tax exemptions against the taxpayer] is an accepted canon of statutory interpretation, it should not be applied to force a conclusion that the legislature intended something other than what is expressed in the plain language of the statute." *Id.* It is well settled that strict construction "does not mean that whenever a controversy is or can be raised of the meaning of a statute, ambiguity occurs, which immediately and inevitably determines the interpretation of the statute. Its proper office is to help to solve ambiguities, not to compel an immediate surrender to them." *Meyering v. Miller,* 330 Mo. 885, 51 S.W.2d 65, 68 (1932) (quoting *Citizens' Bank of La. v. Parker,* 192 U.S. 73, 85–86, 24 S.Ct. 181, 48 L.Ed. 346 (1904)). Construed strictly, Section 353.110.1 says the RDC shall not be subject to paying taxes on improvements after acquiring the redevelopment property. The words in the statute have plain meaning. We cannot construe the words in the statute against the taxpayer in contravention of their plain meaning. Point denied.

## III. The constitutional viability of abating taxes in the year of acquisition

In its third point, the County argues that abating taxes in the year of acquisition would extinguish an indebtedness to the county, violating Article III, Section 39 of the Missouri Constitution. The County did not raise this argument at trial. "Arguments not presented to the court below are not preserved for appeal." *Jones Co. Custom Homes of Tenn., Inc. v. Commerce Bank*, 116 S.W.3d 653, 659 (Mo. App.2003). Point denied.

The judgment is affirmed.

ROBERT G. ULRICH and JOSEPH M. ELLIS, Judges, concur.