James WADDINGTON,
Petitioner/Appellant/Cross–Respondent,

v.

Maureen (Waddington) COX,
Respondent/Cross–
Appellant.

No. ED 88992.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 2, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 2008.

Application for Transfer Denied
April 15, 2008.

Douglas Bellon, Martha M. Clark, co-counsel, St. Charles, MO, for Appellant.

Timothy Farrell St. Peters, MO, for Respondent.

BOOKER T. SHAW, Judge.

Appellant James Waddington (Father) appeals from the trial court's judgment denying his motion for contempt against Respondent Maureen Cox (Mother) for her failure to pay child support and denying in part Father's motion for monetary judgment. In his first point, Father argues the trial court erred in interpreting section 452.340.5 [1] to require an official transcript as notice to a non-custodial parent regarding a child's college enrollment. In his second point, Father argues the trial court abused its discretion in awarding only partial attorney fees based on its misinterpretation of the notice requirements.

Mother cross-appeals and argues that the trial court erred by misapplying the law regarding notice of enrollment, denying her affirmative defense that she was denied visitation, and denying her affirmative defense that Ryan was emancipated. We affirm in part, reverse in part, and remand.

---

1. All further statutory references are to RSMo 2000.

## I. Facts and Procedural History

The parties' marriage was dissolved in St. Charles County in 1996. The Judgment and Decree of Dissolution awarded Father the primary care, custody and control of the parties' only child, Ryan Waddington (Ryan), born August 15, 1981. Mother was awarded reasonable custody and visitation and ordered to pay $378.00 per month for child support.

Following Ryan's graduation from high school in May 2000, he enrolled in Loyola University New Orleans ("Loyola"). He maintained his status as a full-time student at Loyola through his twenty-second birthday. On October 10, 2000, Ryan mailed Mother a copy of his letter of conditional acceptance and a list of his classes for his first semester at Loyola. For each semester Ryan was enrolled at Loyola, he mailed Mother and her attorney a copy of his grades, the courses completed, the credits received for each course completed, and a list of courses and credits he was enrolled in for the upcoming semester. He printed the transcript, which included his grades and credits for each semester, directly from the Loyola On-line Records Access system (LORA). To access LORA, Ryan logged onto the system using a personal user name and password. Each student's personal information is entered into the LORA system by Loyola employees.

After Mother made no child support payments from October 2000 through August 2003, Father filed a motion for contempt. At the time of trial in 2005, the child support arrearage was $13,230.00 plus $5,292.00 in interest, for a total of $18,654.30. During the time Ryan attended Loyola, Father provided financial assistance by paying credit card bills, purchasing books, and paying medical expenses. In addition, Ryan stayed at Father's home during breaks.

On September 21, 2006, the Circuit Court of St. Charles County issued its judgment denying Father's motion for contempt and granting in part and denying in part Father's motion for monetary judgment. The trial court determined that the LORA documents were not an official transcript of a student's grades, therefore Ryan failed to provide Mother with the documentation required by Section 452.340.5, and so Mother's obligation to pay child support terminated December 31, 2000.

## II. Discussion

### Adequacy of Notice

The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Generally, a parent's child support obligation terminates when the child on whose behalf payments are made reaches the age of eighteen. Section 452.340.3. However, when the child enrolls in an institution of vocational or higher education, and achieves grades sufficient to re-enroll, the child is eligible for a continuation of benefits until the child completes his or her education or until the child reaches age twenty-two, whichever occurs first. *Ricklefs v. Ricklefs*, 111 S.W.3d 541, 544 (Mo.App.W.D.2003) (*citing* Section 452.340).

■ In this case, compliance with section 452.340.5 is determinative of whether Mother had a continuing obligation to pay child support while Ryan was in college. The statute requires the child to provide each parent with a "transcript or similar official document" provided by the institution showing: (1) the courses enrolled in; (2) the courses completed for each semes-

ter; (3) the grades and credits received for each completed course; and a transcript from the institution listing (a) the courses enrolled in and; (b) the number of credits for each course for the upcoming semester. *Morton v. Myers,* 21 S.W.3d 99, 106–07 (Mo.App.W.D.2000). "Proof of eligibility for parental support is on a term-by-term or semester-by-semester basis." *Ricklefs* at 544–45.

In an effort to comply with the statute, Ryan submitted to Mother each semester a printout of his transcript from LORA. The trial court heard testimony from Susan Brunson, manager of the student records office at Loyola, who testified that the LORA document is not considered an official transcript because it is not on university paper, nor is it stamped with the university seal. Brunson characterized an official transcript as "one that another institution would accept as the record of an individual." Here, however, we are not concerned with the provision of credentials to another institution of higher education but rather the notice of college enrollment to a non-custodial parent. The information contained in a LORA document is otherwise identical to a transcript, is entered into the system by university personnel, and cannot be altered by a student.

The trial court held the LORA documents failed to comply with section 452.340.5 because the university's website did not provide an official transcript and the documents did not have the "same official status as a transcript." Father contends the trial court erred in its interpretation of "transcript or similar official document" by inserting the term "official" before transcript, thereby excluding the LORA printouts, and, as a result, the court

wrongly terminated Mother's child support obligation.

■■■ The issue before us appears to be one of first impression. Statutory interpretation is a question of law, and we review *de novo. Lombardo v. Lombardo,* 35 S.W.3d 386, 388 (Mo.App.W.D.2000)(internal citations omitted). When interpreting a statute, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning, and give effect to that intent, if possible. *Glasgow Enterprises, Inc. v. Bowers,* 196 S.W.3d 625, 631 (Mo.App. E.D.2006). "[E]ach word, clause, sentence and section of a statute should be given meaning." *State ex rel. Womack v. Rolf,* 173 S.W.3d 634, 638 (Mo. banc 2005). "Courts avoid interpreting statutes to include qualifiers where such an interpretation impermissibly adds language to the statute." *BHA Group Holding, Inc. v. Pendergast,* 173 S.W.3d 373, 379 (Mo.App.W.D.2005).

Mother maintains the document must be official to qualify as a transcript. A survey of dictionary definitions reveals no universal understanding that a transcript is by definition official. Webster's Online Dictionary describes a transcript as "a reproduction of a written record (e.g. of a legal or school record)." [2] Webster's New College Dictionary (5th ed.2006) defines transcript as "any copy or reproduction, especially [*but evidently not exclusively*] one that is official, as a copy of a student's record in school or college, listing courses, grades, etc." By contrast, Merriam–Webster's Online Dictionary defines transcript as "an official copy of a student's educational record," [3] and Dictionary.com Unabridged (v 1.1) Random House, Inc. defines transcript as "an offi-

---

**2.** *http://www.websters-online-dictionary.org/ definition/transcript* (last visited November 7, 2007).

**3.** *http://www.merriam-webster.com/dictionary/ transcript* (last visited November 7, 2007).

cial report supplied by a school on the record of an individual student, listing subjects studied, grades received, etc."[4] In short, the authorities are inconclusive.

Given the varying definitions and the ubiquity and security of online student records systems similar to LORA, this Court declines to speculate whether the legislature assumed that a "transcript" is inherently official or considered the possible implications of such an assumption in a case like the one before us. We can only observe that the legislature did not include the word "official" before transcript. As such, "official" only modifies the word "document." To interpret the statute to require an official transcript would be to add qualifying language where it does not exist.

■ Missouri courts liberally construe section 452.340.5 to be consistent with the public policy of promoting the pursuit of higher education. *Mandel v. Eagleton*, 90 S.W.3d 527, 531 (Mo.App.E.D.2002)(internal citations omitted). Therefore, we conclude that a parent's obligation to provide financial support to a child in college should not terminate merely for lack of an official stamp, where, as here, substantial evidence demonstrates that the parent received actual notice in the form of an inalterable online transcript containing all the information required by the statute. Furthermore, Mother testified that she received the documents and had no reason to believe the information contained in the LORA records was inaccurate. The judgment of the trial court is reversed as to Point I.

*Attorney Fees*

■ The trial court found that Mother had timely and valid notice of Ryan's first semester enrollment by virtue of his condi-

tional letter of acceptance in October 2000. Thus, Mother was obligated to pay support for that semester, and her failure to do so justified an award of attorney fees to Father. However, because the court found that the LORA transcripts did not provide adequate notice of Ryan's continued enrollment for subsequent semesters, and as such Mother was not liable for support for those semesters, the court did not award corresponding attorney fees. Therefore, in his second point, Father argues the trial court abused its discretion by awarding only partial attorney fees based on its misinterpretation of the notice requirement. He argues the trial court's decision to limit the award of attorney fees was made arbitrarily.

The trial court has the discretion to award attorney's fees pursuant to section 452.355.1, which provides the court may order one party to pay the other party's reasonable attorneys' fees after considering all relevant factors, including the financial resources of both parties, the merits of the case, and the actions of the parties during the pendency of the action. An award of attorney's fees will be affirmed on appeal unless it is not supported by substantial evidence or it is against the weight of the evidence. *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778, 783 (Mo. banc 2003)(internal citations omitted).

■ The trial court is considered an expert on the necessity, reasonableness, and value of attorney's fees. *Travis v. Travis*, 174 S.W.3d 67, 71 (Mo.App.W.D.2005)(internal citations omitted). This Court will reverse the trial court's award of attorney's fees only upon finding that it has abused its discretion, and considers the trial court as presumptively correct. *Id.* To establish an abuse of discretion, Father must show the award is

---

4. *http://dictionary.reference.com/browse/* *transcript* (last visited November 7, 2007).

against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

The trial court's limitation of attorney fees was reasonable in the context of its good faith interpretation of section 452.340.5 on a matter of first impression. Our hindsight determination of error does not render the court's award of attorney fees an abuse of discretion. Point II is therefore denied, but the trial court maintains its discretion to revisit its award of attorney fees on remand consistent with this Court's holding on Point I.

*Mothers Cross–Appeal*

In her first point, Mother contends the trial court erred in ordering her to pay child support plus interest for the months of October, November, and December, 2000, and for eighteen days in January, 2001 because she claims she did not receive proof of Ryan's enrollment.

As set out by the Supreme Court in *In re Kohring*, 999 S.W.2d 228, 233 (Mo. banc 1999), eligibility for support during the first semester may be established simply by proof of enrollment. Mother argues the trial court erred in finding Ryan's conditional acceptance letter met the statutory notice requirement, asserting that because it was a conditional acceptance, and it was not received until mid-October of the Fall 2000 semester, it did not constitute notice of enrollment.

Here, as in *Kohring* and *Morton*, Ryan's eligibility for support during the first semester was established by his letter of acceptance. No other notice requirements apply for the first semester. Because both of these cases were decided before Mother chose to cease child support payment on October 18, 2000, the trial court held Mother in contempt for failure to pay child support. The court reasoned further that Mother had knowledge of her obligation and her failure to pay court-ordered child

support constituted willful and contumacious refusal to pay. We agree. Point denied.

In her second point, Mother argues the trial court erred in denying her affirmative defense that Father failed to provide visitation. Specifically, Mother blames Father for the estrangement and claims his actions effectively denied her rightful visitation with Ryan. We will uphold the trial court's judgment unless it is against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ There is no evidence in the record to support Mother's contention that Father interfered with Mother's visitation or that Father denied visitation. Furthermore, Ryan testified he chose not to continue his relationship with Mother because, among other reasons, she had him admitted to a psychiatric facility while he was in high school. Point II is denied.

In her third point, Mother argues the trial court erred in denying her affirmative defense that her obligation to pay child support payments abated when Ryan left home for college because Ryan was emancipated, and Father relinquished his parental control by express implied consent. Mother asserts the trial court's ruling was against the weight of the evidence.

The trial court concluded Ryan was not emancipated, and Father did not relinquish his parental rights to Ryan after he entered college, nor did Father fail to provide visitation. We review to determine whether substantial evidence supported these rulings.

■ Here, the record is undisputed that Ryan was not emancipated, that Father did not relinquish his parental rights when Ryan went to college, and that Father continued to offer financial support and to allow Ryan to stay with him during

school breaks. Moreover, Ryan's attendance at college away from home does not constitute relinquishment of custody by custodial parent. *Balogh v. Humel,* 834 S.W.2d 257, 259 (Mo.App.W.D.1992). There is substantial evidence to support the trial court's finding Point III is denied.

### III. Conclusion

We reverse the trial court's judgment as to Father's first point on appeal. We find the LORA documents comply with the statutory notice requirements and Mother's child support obligation did not terminate while Ryan attended Loyola. Because this ruling will affect the retroactive child support which Mother was obligated to pay, we remand for proceedings consistent with this opinion. The trial court's judgment is affirmed in all other respects.

LAWRENCE E. MOONEY, P.J., and NANNETTE A. BAKER, J., concur.