

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| GREG HALDERMAN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85066 |
| | ) | (consolidated with |
| CITY OF STURGEON, MISSOURI | ) | WD85080 and WD85252) |
| and TYLER PATTERSON, | ) | |
| | ) | Filed: May 2, 2023 |
| Appellants. | ) | |

**Appeal from the Circuit Court of Boone County
The Honorable Jeff Harris, Judge**

**Before Division Four: Gary D. Witt, C.J.,
and Alok Ahuja and Janet Sutton, JJ.**

In 2017, the Board of Aldermen of the City of Sturgeon voted to terminate the employment of the City's Chief of Police, Greg Halderman. Halderman sued the City, the City's Mayor, and the Aldermen who had voted to terminate him in the Circuit Court of Boone County. Halderman sought judicial review of the City's termination decision. He also alleged that he was entitled to damages because the City and City officials had wrongfully discharged him, and because the City officials had tortiously interfered with his employment contract.

The circuit court ruled that the City had failed to afford Halderman the formal contested-case hearing to which he was entitled, and vacated Halderman's termination. Halderman abandoned his claims against all of the City officials,

except for his tortious interference claim against Alderman Tyler Patterson. Following a jury trial, the circuit court entered judgment for Halderman on his wrongful discharge claim against the City, and on his tortious interference claim against Patterson.

The City and Patterson appeal. We affirm the circuit court's determination that Halderman's 2017 termination was contrary to law, because the City failed to provide him with a contested-case hearing. We also affirm the wrongful-discharge judgment against the City. We reverse the judgment against Patterson for tortious interference with contract, however. Finally, we grant Halderman's motion for an award of attorney's fees on appeal against the City, and remand to the circuit court for determination of the amount of Halderman's recoverable fees.

### Factual Background

On March 27, 2017, the Board of Aldermen for the City of Sturgeon voted to remove Halderman as Chief of the Sturgeon Police Department pursuant to § 106.273.1.[1] The Board found just cause to remove Halderman under §§ 106.273.1(2)(a), (b), and (f). In support of Halderman's removal, the Board found the following facts:

> February 24, 2014 – Chief Halderman admitted to making inappropriate and offensive comments to a minor female. Chief Halderman admitted to getting into the vehicle of the minor female without her permission. The minor female felt uncomfortable with Chief Halderman's inappropriate and offensive comments. This had happened on several occasions. When Chief Halderman entered the minor female's vehicle, she became extremely uncomfortable.

---

[1] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2022 Cumulative Supplement.

January 13, 2015 – Chief Halderman purposely pointed a hand gun at a co-worker's face, making the co-worker very uncomfortable and afraid for his safety.

May 21, 2016 – Chief Halderman was contacted by Boone County Joint Communications with a request to respond to a 911 emergency call in the City of Sturgeon. Chief Halderman responded by stating he "had been drinking and that he wasn't supposed to be on tonight." Chief Halderman asked the dispatcher at Boone County Joint Communications to "show him on scene out of uniform." Chief Halderman responded to the scene of the 911 call after admitting he had been drinking alcohol.

February 20, 2017 – Chief Halderman appeared at the Boone County Jail to interview 3 suspects regarding crimes that occurred in the City of Sturgeon. Chief Halderman behaved in an unprofessional manner by harassing and verbally abusing 3 prisoners, by yelling at them, swearing at them and threatening them with prison time. This agitated the prisoners and made the job of the staff at the Boone County Jail more difficult. 3 Boone County Sheriff's deputies made written reports describing the Chief's unprofessional behavior. 1 Boone County Sheriff's Deputy reported that he may have smelled intoxicants on Chief Halderman's breath at that time. Chief Halderman admitted that he had consumed alcohol just prior to leaving for the jail. Chief Halderman admitted that his behavior was due to the stress he experienced during events that had occurred in the week before this incident.

Following his termination, Halderman filed suit in the Circuit Court of Boone County on May 4, 2017. Halderman's petition asserted claims against the City; Mayor Gene Kelly; and the members of the City's Board of Aldermen (Tyler Patterson, Rhonda Dawson, Travis Sutton, and Danny Joiner). Halderman alleged that the defendants "conspired to remove [him] from office." Halderman contended that the City had unlawfully failed to hold a formal contested-case hearing prior to his discharge. Halderman's Petition also claimed that his termination was not for the reasons set forth in the Board's decision. Instead, he

3

alleged that he was fired in retaliation for three incidents: his refusal to follow an instruction from Kelly and Sutton to run an unlawful criminal background check on a competing mayoral candidate; his report of allegations of domestic violence between another Sturgeon police officer and her husband (who were close friends of Patterson's); and his report of Patterson's removal of Halderman's personnel file from City Hall in violation of Missouri's Sunshine Law, § 610.023.2.

Halderman's Petition alleged six counts. Count I sought judicial review of his termination as a contested case under the Missouri Administrative Procedure Act ("MAPA"), § 536.010, *et seq.*; in the alternative, Count II sought judicial review of Halderman's termination as a non-contested case; Count III alleged that all of the defendants had denied Halderman his rights under the Due Process Clause of the Missouri Constitution; Count IV alleged a claim for wrongful discharge in violation of public policy against the City; Count V alleged a wrongful discharge claim against the individual City officials; and Count VI sought damages from the City officials for tortious interference with Halderman's employment contract with the City.

The circuit court granted partial summary judgment to Halderman as to Counts I and III on February 15, 2019. The court found that the removal hearing required by § 106.273 was a "contested case," and that the City had failed to comply with the procedural requirements for contested cases specified in MAPA. The circuit court also found that the City's failure to conduct a formal hearing violated Halderman's due process rights. The court ordered the City to reinstate Halderman as police chief, and pay him back wages from the date of his termination. On March 11, 2019, the circuit court entered an amended judgment,

4

certifying its summary judgment ruling as a partial final judgment under Rule 74.01(b).

The defendants appealed. Despite the circuit court's certification of the judgment for immediate appeal under Rule 74.01(b), this Court dismissed the appeal. *Halderman v. City of Sturgeon*, No. WD82668, 592 S.W.3d 824 (Mo. App. W.D. 2020). We concluded that the circuit court had not entered judgment on a distinct "judicial unit" which could be appealed while Halderman's other claims remained pending in the circuit court. *Id.* at 829.

After reinstating Halderman, the City placed him on administrative leave with pay. The City then held a contested-case hearing before the Board of Aldermen to remove Halderman from office a second time. By the time of the second termination hearing, none of the Aldermen who had voted to terminate Halderman in 2017 remained on the Board. The newly constituted Board voted to terminate Halderman on April 30, 2019. The Board found cause for termination based on the two alcohol-related incidents which formed part of the basis for Halderman's 2017 termination (one occurring on May 21, 2016, and the other on February 20, 2017). Halderman did not seek judicial review of the City's 2019 termination decision.

On September 16, 2019, the defendants moved for summary judgment on Halderman's wrongful discharge and tortious interference claims. The circuit court granted partial summary judgment to the defendants on Halderman's wrongful discharge claims, but denied summary judgment on the tortious interference claim. While the court dismissed Halderman's common-law wrongful discharge claims, it granted him leave to file an amended petition to

5

assert a wrongful discharge claim under § 105.055. Although § 105.055 had previously only authorized wrongful discharge claims against State agencies, the statute had been amended in 2018 to permit wrongful discharge claims against political subdivisions of the State. *See* S.B. 1007, 99th Gen. Assembly, 2d Reg. Session (2018).

Halderman filed his First Amended Petition on May 29, 2020, incorporating the original six counts, and adding a statutory wrongful discharge claim against the City.

A jury trial on Halderman's wrongful discharge and tortious interference claims began on July 26, 2021. Before Halderman rested, he voluntarily dismissed his claims against all defendants except the City and Patterson.

The jury returned verdicts for Halderman against the City for wrongful discharge, and against Patterson for tortious interference with contract. The jury awarded Halderman $300,000 in compensatory damages on each claim, and found Patterson liable for an additional $15,000 in punitive damages. The court subsequently awarded Halderman attorney's fees of $473,418.75, and costs of $6,511.35, against the City under § 105.055.7(4).

The City and Patterson appeal. On appeal, they have been jointly represented, and filed joint briefing.

**Discussion**

**I.**

The Appellants' first Point challenges the circuit court's ruling that the City was required to hold a formal contested-case hearing before terminating Halderman. The City claims that the proceeding cannot be deemed a "contested case" because § 106.273 only requires the City to hold a "meeting" before

6

terminating its chief of police, and does not specifically mandate all of the procedural formalities required in a contested case.

The level of procedural formality required before terminating Halderman's employment depends on whether the matter is properly classified as a contested or non-contested case.  *Sovulewski v. Mo. Bd. of Nursing*, 642 S.W.3d 373, 376-77 (Mo. App. E.D. 2022).  "The classification of a case as 'contested' or 'noncontested' is determined as a matter of law."  *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. 2009).  The Missouri Administrative Procedure Act ("MAPA") defines a "[c]ontested case" as a "proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing."  § 536.010(4).  The Missouri Supreme Court has explained that "noncontested" cases involve "decisions which are not required to be determined after [a] hearing."  *Hagley v. Bd. of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 667 (Mo. 1992) (citing *State ex rel. Wilson Chevrolet, Inc. v. Wilson*, 332 S.W.2d 867, 870 (Mo. 1960)).

"Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law."  *Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. 2006); *see* §§ 536.060 to 536.095 (specifying procedures in contested cases).

Chapter 536 "mandates that if a hearing is required by substantive law, it must be conducted according to contested case procedures."  *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 328 (Mo. 1995).  The "law" which may impose a

hearing requirement "includes any ordinance, statute, or constitutional provision that mandates a hearing." *McCoy v. Caldwell Cnty.*, 145 S.W.3d 427, 428 (Mo. 2004). "The requirement to hold a hearing can be imposed expressly by statute or ordinance[,] . . . [or] may also be imposed by due process principles where, for example, the agency decision 'concerns a protected property interest.'" *In re Kansas City Power & Light Co.'s Request for Auth. to Implement a Gen. Rate Increase v. Pub. Serv. Comm'n*, 509 S.W.3d 757, 783-84 (Mo. App. W.D. 2016) (quoting *State ex rel. Coffman v. Pub. Serv. Comm'n*, 121 S.W.3d 534, 539 (Mo. App. W.D. 2003)). "The right to a hearing, in other words, is determined by substantive law outside the MAPA." *Yarber*, 915 S.W.2d at 328. "The relevant inquiry is not whether the agency in fact held a contested case hearing, but whether it should have done so." *Id.*

The legal right to a hearing will often be founded on the federal and State Due Process Clauses. *See* U.S. Const. Amend. XIV, § 1; Mo. Const. Art. I, § 10. "In order to be entitled to a hearing under due process of law, a plaintiff must have either a life, liberty, or property interest protected by the Constitution." *Yarber*, 915 S.W.2d at 328. "Generally, the taking of a property right without notice and an opportunity to be heard violates the due process clauses of the United States and Missouri Constitutions." *Weber v. Firemen's Ret. Sys.*, 872 S.W.2d 477, 479 (Mo. 1994).

Because individuals holding constitutionally protected property interests are generally entitled to pre-deprivation hearings under the Due Process Clause, the Missouri Supreme Court has held that government agencies seeking to deprive individuals of such property rights must comply with contested-case

8

procedures.  For example, in *Byrd v. Board of Curators of Lincoln University*, 863 S.W.2d 873 (Mo. 1993), the Court concluded that a university was required to comply with contested-case procedures before terminating a tenured professor.  The Court explained:

> "Contested case" is defined as a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing.  § 536.010(2).  A tenured professor has a property interest in continued employment.  Due process gives a tenured professor a legal right to a hearing regarding termination of services.  *Perry v. Sinderman*, 408 U.S. 593, 602 (1972).  Thus, Byrd's was a contested case.

*Id.* at 875.

Similarly, in *Weber*, 872 S.W.2d 477, the Court held that a firefighter who was injured on the job was entitled to a contested-case hearing before being denied disability retirement benefits, because the firefighter had a constitutionally protected property interest in receiving such benefits:

> Generally, the taking of a property right without notice and an opportunity to be heard violates the due process clauses of the United States and Missouri Constitutions.  U.S. Const. amend. XIV, § 1; Mo. Const. art. I, § 10.  Because of the dangerous nature of Captain Weber's employment, which does not allow him to refuse a call that places him in danger, his right to a medical retirement after an on-the-job injury certainly is substantial enough to constitute a property right.  Thus, Weber was entitled "by law" to a hearing as to whether he was eligible for a disability retirement from the Firemen's Retirement System, and he therefore was entitled to a contested case hearing in accordance with MAPA.

*Id.* at 479 (citations omitted); *see also Yarber*, 915 S.W.2d at 328 (public high school student who was denied a full semester of academic credit for disciplinary reasons was entitled to contested-case hearing).  "[T]he fundamental rationale of the Supreme Court in both *Byrd* and *Yarber* is that a property interest created by

9

state law required a hearing and thereby made the contested case provisions . . . applicable." *Physician No. 3491 v. No. Kansas City*, 51 S.W.3d 101, 106 (Mo. App. W.D. 2001).

Applying these principles, this Court has held that contested-case procedures must be followed where an agency seeks to terminate or suspend a public employee who is dischargeable only for cause. As the Eastern District explained in *Sapp v. City of St. Louis*, 320 S.W.3d 159 (Mo. App. E.D. 2010):

> A property interest in public employment is based upon a reasonable and legitimate expectation of continued employment. An employee who can only be discharged for cause has a constitutionally-protected property interest in continued employment, which creates a right under Missouri law to notice and a hearing prior to being discharged from his employment. In addition to discharges for cause, suspensions for cause have also been found to implicate constitutionally-protected property interests. . . .
>
> . . . [A] constitutionally-protected property interest is at issue in this case. As a result, Sapp was entitled to have his case adjudicated as a contested case . . . . Because there was a constitutionally-protected property interest at issue here, the Commission was obligated to provide Sapp with a contested case hearing to protect his right to due process.

*Id*. at 164 (citations omitted).

The Eastern District applied the same analysis in *Smith v. City of St. Louis*, 633 S.W.3d 472 (Mo. App. E.D. 2021):

> Where the State grants an employee a right or expectation that adverse action will not be taken against the employee except upon the occurrence of specified behavior, the determination of whether such behavior occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed. Suspension for cause, like termination of employment, implicates constitutionally-protected

10

property interests.  Because Smith's suspension involved a constitutionally-protected property interest, she was entitled to have her case adjudicated as a contested case.  Consequently, the Commission was obligated to provide Smith with a hearing—a proceeding at which a measure of procedural formality is followed—to protect her right to due process, and Smith had a right to challenge her suspension via a hearing with heightened procedural safeguards because her procedural due process rights were implicated.

*Id.* at 477 (citations omitted).

Similarly, in *Piercy v. Missouri State Highway Patrol*, 583 S.W.3d 132 (Mo. App. W.D. 2019), we concluded that a proceeding for discipline or removal of a Highway Patrol member was a contested case.  The statute at issue in *Piercy*, § 43.150.1, permitted adverse employment action "only for cause after a formal charge has been filed in writing," although the statute did not define "cause."  *Id.* at 140.  Section 43.150.1 did not itself require the agency to employ contested-case procedures.  Instead, § 43.150.1 simply required that a disciplinary board "conduct a hearing and report to the superintendent the finding by the majority of the board, whether the charges are true and what discipline, if any, should be imposed," without providing any further details as to the procedures to be employed during the "hearing."  We nevertheless concluded that a proceeding to remove a Highway Patrol officer "for cause" was required to comply with contested-case procedures.  *Id.* at 144.

In this case, Halderman had a property interest in his employment, because the relevant statutes limited the circumstances in which he could be terminated.  Halderman was only subject to removal by the City if its "governing body, by two-thirds majority vote, [found] just cause" for removal. § 106.273.2(4).  Section 106.273.1(2) specified that

11

"**Just cause**", exists when a chief:

(a)  Is unable to perform his or her duties with reasonable competence or reasonable safety as a result of a mental condition, including alcohol or substance abuse;

(b)  Has committed any act, while engaged in the performance of his or her duties, that constitutes a reckless disregard for the safety of the public or another law enforcement officer;

(c)  Has caused a material fact to be misrepresented for any improper or unlawful purpose;

(d)  Acts in a manner for the sole purpose of furthering his or her self-interest or in a manner inconsistent with the interests of the public or the chief's governing body;

(e)  Has been found to have violated any law, statute, or ordinance which constitutes a felony; or

(f)  Has been deemed insubordinate or found to be in violation of a written established policy, unless such claimed insubordination or violation of a written established policy was a violation of any federal or state law or local ordinance.

The provisions of § 106.273, which prohibited the City from terminating Halderman except for specific reasons falling within the statutory definition of "just cause," plainly gave him a property interest in his continued employment as Chief of Police.

> For employees to have a property interest in their employment, they must have a legitimate claim of entitlement to it.  This claim typically arises from contractual or statutory limitations on the employer's ability to terminate an employee.  *The hallmark of a property interest is an individual entitlement grounded in state law which cannot be removed except "for cause."*

*Div. of Family Servs. v. Cade*, 939 S.W.2d 546, 552 (Mo. App. W.D. 1997) (emphasis added; footnotes omitted).

In addition, § 106.273.2 specifically required a pre-termination hearing, and directed that Halderman be provided with: written notice of the hearing, of the charges against him, and of the facts supporting those charges; an opportunity to be heard before the governing body; the right to representation by counsel; and the right to present evidence and witnesses on his own behalf. § 106.273.2(2). The statute also made clear that the information developed during the hearing would form the basis for the removal decision, since it specified that, "[u]pon the satisfaction of the removal procedure under subsection 2 of this section, the chief shall be immediately removed from his or her office . . . ." § 106.273.3. The statute also directed that any Chief of Police removed from office "shall be issued a written notice of the grounds of his or her removal within fourteen calendar days of the removal." § 106.273.4. *See City of Valley Park v. Armstrong*, 273 S.W.3d 504, 507 (Mo. 2009) ("The term 'hearing,' as used in [the statutory definition of a 'contested case'] means a proceeding at which a 'measure of procedural formality' is followed."; footnote and citation omitted).

Because Halderman had a property interest in his employment, due-process principles required that he be afforded a hearing before his termination. Moreover, § 106.273.2 itself required a pre-termination hearing "at which a 'measure of procedural formality' is followed." *Valley Park*, 273 S.W.3d at 507. Accordingly, Halderman's "legal rights . . . [were] required by law to be determined after hearing," rendering this a contested case within the meaning of § 536.010(4).

Appellants rely on *Valley Park* and *Winter Brothers Material Co. v. County of St. Louis*, 518 S.W.3d 245 (Mo. App. E.D. 2017), to argue that the law requiring the hearing must itself mandate the full panoply of contested-case procedures, independently of §§ 536.060 to 536.095, before a case may be considered a "contested case." *Valley Park* and *Winter Brothers* are distinguishable, however. Neither case involved constitutionally protected property interests which could only be denied based on specific criteria. Instead, both *Valley Park* and *Winter Brothers* were land-use cases, in which governing bodies made decisions under open-ended substantive standards. Thus, in *Valley Park*, the Boundary Commission reviewed proposals to alter municipal boundaries, and was charged with determining whether "the boundary change will be in the best interest of the municipality or municipalities and unincorporated territories affected by the proposal." § 72.403.3. Similarly, *Winter Brothers* involved an application for a conditional use permit; such permit applications require the governing body to determine whether a particular land use would "contribut[e] to and promot[e] community welfare and convenience." *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur,* 477 S.W.3d 49, 54 (Mo. App. E.D. 2015); *see also State ex rel. Dotson v. Cnty. Comm'n of Clay Cnty.*, 941 S.W.2d 589, 592 (Mo. App. W.D. 1997) (conditional use permit must be "'conducive to the general welfare of the community'"; citation omitted).

Moreover, the procedures involved in *Winter Brothers* were "indistinguishable from the hearing requirements at issue in *450 N. Lindbergh Legal Fund*." 518 S.W.3d at 253. In *450 North Lindbergh*, the Court explained

14

that the hearing required in that case "did not determine the legal rights, duties, or privileges of any party," as required in a contested case, since the hearing could be held before the City's Planning and Zoning Commission, and "[n]othing in [the] City Code requires the City Council to follow the recommendation of the Planning and Zoning Commission." 477 S.W.3d at 54. It is well-established that a hearing which is merely advisory, but does not actually determine a party's rights, is not a "contested case." *See*, *e.g. Nowden v. Div. of Alcohol & Tobacco Control*, 552 S.W.3d 114, 117-18 (Mo. 2018); *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 472 (Mo. 2018).

The City does not dispute the circuit court's conclusion that it did not afford Halderman the contested-case procedures specified in §§ 536.060 to 536.095. The City's termination decision was accordingly contrary to law, and the circuit court properly vacated it. Point I is denied. Given our disposition, we need not address Appellants' second Point, which challenges the circuit court's alternative holding that the procedures employed to terminate Halderman in 2017 independently violated his rights under the Due Process Clause.

## II.

Appellants' third Point contends that Patterson was entitled to judgment notwithstanding the verdict on Halderman's claim for tortious interference with contract, because he was a City Alderman and therefore not a third party to Halderman's contract with the City. We agree.

"'The standard of review of the denial of a JNOV is essentially the same as the overruling of a motion for directed verdict.'" *Williams v. City of Kansas City*, 641 S.W.3d 302, 314-15 (Mo. App. W.D. 2021) (*en banc*) (quoting *Darks v. Jackson Cnty.*, 601 S.W.3d 247, 254 (Mo. App. W.D. 2020)). "'We will only

15

reverse a trial court's denial of a motion for JNOV or directed verdict if *either* the plaintiff has not made a submissible case *or* the defendant establishes an affirmative defense as a matter of law.'" *Id.* at 315 (quoting *Payne v. Fiesta Corp.*, 543 S.W.3d 109, 126 (Mo. App. E.D. 2018)).

"Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Hensen v. Truman Med. Ctr., Inc.*, 62 S.W.3d 549, 552-53 (Mo. App. W.D. 2001).

The Missouri Supreme Court has held that "'[a]n action for tortious interference with a business expectancy will lie against a third party only.' 'Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference.'" *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. 2013) (quoting *Zipper v. Health Midwest*, 978 S.W.2d 398, 419 (Mo. App. W.D. 1998)); *see also, e.g., Nickel v. Stephens Coll.*, 480 S.W.3d 390, 399-400 (Mo. App. W.D. 2015).

In *Farrow*, the plaintiff brought a claim against one of her supervisors, a doctor who allegedly retaliated against the plaintiff when she refused and then reported his sexual advances. 407 S.W.3d at 602. The Missouri Supreme Court affirmed the circuit court's grant of summary judgment in favor of the doctor. *Id.* The Court held that the plaintiff could not bring a tortious interference claim against the doctor because "while acting as Farrow's supervisor, he was Hospital's agent, not a third party." *Id.* at 602-03.

In this case, Halderman's tortious interference claim focuses on the City's decision to terminate his employment in 2017, when Patterson was a member of the City's Board of Aldermen; Halderman does not allege that Patterson unjustifiably induced the City's *2019* termination decision (which occurred after Patterson left the Board). As a member of the City's governing body at the relevant time, Patterson was charged under § 106.273.2 with voting on the decision whether to discharge Halderman as the City's police chief. Patterson's position as a member of the Board of Aldermen was analogous to an officer or director of a corporation. Such persons cannot be held liable for tortiously interfering with the contracts of the entity they manage.

Halderman argues that he could assert a tortious interference claim against Patterson, even though Patterson was a City Alderman, in two circumstances: (1) if Patterson was acting for his personal interests, rather than in the interest of the City, when he induced the City to terminate Halderman's employment; or (2) if Patterson employed "improper means," such as misrepresentation or defamation. We disagree. Whether Patterson acted from personal interests, and whether he employed "improper means," may be relevant to determining whether he acted with an "absence of justification" – the fourth element of a tortious interference claim. The "absence of justification" element of a tortious interference claim is a separate issue, however, from the question whether the defendant is a third party to the contract. This is made clear by *Farrow*, which affirmed the grant of summary judgment to the defendant doctor on two separate grounds: (1) because "Farrow failed to allege facts supporting Doctor's lack of justification for the statements he made about her job performance"; and

17

(2) "because while acting as Farrow's supervisor, he was Hospital's agent, not a third party." 407 S.W.3d at 602-03.

Notably, in *Farrow*, the plaintiff presented evidence that the doctor-supervisor made a sexual proposition to plaintiff, and became visibly angry when she refused it. *Id.* at 585. Following his spurned sexual advance, plaintiff alleged that the doctor engaged in a series of harassing and retaliatory actions: he made inappropriate sexual and racist comments to her; made defamatory statements about her work; and berated and harassed her in front of other employees. *Id.* at 585-86. Despite a course of conduct employing wrongful and even unlawful means, which was allegedly motivated by the doctor's personal interests, the Supreme Court nevertheless held that no tortious interference claim could be asserted.

We likewise held that a plaintiff who was terminated from employment could not assert a tortious interference claim against two supervisory employees, despite her claim that the supervisors "were acting outside of the interest of their employer and the scope of their employment by retaliating against" the plaintiff "after she reported them for violating [the employer's] policy and rules." *Reed v. Curators of Univ. of Mo.*, 509 S.W.3d 816, 827 (Mo. App. W.D. 2016). Although the plaintiff argued that the supervisors misrepresented her work performance, and "could not have acted 'for' the [employer]," we affirmed the grant of a directed verdict to the supervisors because, under *Farrow*, they were not third parties to the plaintiff's employment contract. *Id.* at 828-29.

In *Graham v. Hubbs Machine & Manufacturing, Inc.*, 92 F. Supp.3d 935 (E.D. Mo. 2015), the district court rejected the precise argument Halderman

18

makes here: "that there is an applicable exception to the general rule precluding a tortious interference claim against an officer or agent: when the officer/agent is acting for reasons of personal financial or other gain." *Id.* at 943-44. Citing to *Farrow*, the court explained:

> While the allegations that [the defendant-supervisor] was motivated by his personal interests may suffice to establish absence of justification, the fact remains that under controlling Missouri law, [the supervisor] was an agent of [the plaintiff's employer] at the time he made the statements that led to her termination. As such, [the supervisor] cannot be held liable for interfering with plaintiff's business relationship with the company.

*Id.* at 944.

*Farrow* holds that officers or agents of a contracting entity are not strangers to the entity's contracts, but *are* "the contracting party" in the relevant sense. To the extent officers or agents are considered *to be* the contracting party, no tort claim can be asserted against them simply for breaching *their own* contractual obligations – even if the breach is motivated by improper motives or accomplished by improper means. "Missouri has never recognized a mere breach of contract as providing the basis for tort liability." *Chrysler Fin. Co. v. Flynn*, 88 S.W.3d 142, 151 (Mo. App. S.D. 2002) (citing *Khulusi v. Sw. Bell Yellow Pages, Inc.*, 916 S.W.2d 227, 230 (Mo. App. W.D. 1995)). Moreover, Missouri law holds that "punitive damages are not available where the basis of the complaint is breach of contract, even where the breach is intentional, willful, wanton or malicious." *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 903 (Mo. 1990) (citations omitted); *accord, All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281, 290-91 n.12 (Mo. 2022) ("Missouri

19

law never allowed [punitive] damages for breaches of contractual obligations, even when bad faith motivated the breach").

At oral argument, Halderman cited *Bishop & Associates, LLC v. Ameren Corp.*, 520 S.W.3d 463 (Mo. 2017), to argue that a corporate employee can be held liable for tortious interference with the corporation's contracts, if the employee acts through "improper means." In *Bishop*, the Missouri Supreme Court affirmed the grant of summary judgment *in favor of the defendant-employees* on a tortious interference claim, because there was no evidence that the employees acted with an "absence of justification." *Id.* at 472-73. *Bishop* does not cite *Farrow*'s holding that a tortious interference claim can only be asserted against a third party to the contract. *Bishop* reaches a result consistent with *Farrow*, however: it finds that corporate employees could not be held liable for tortiously interfering with a contract to which their employer was a party. While *Bishop* reaches that result on a different basis, it is not inconsistent with *Farrow*, and "'[w]e do not presume the Supreme Court has overruled its previous decision unless it proclaims otherwise.'" *State ex rel. Wratchford v. Fincham*, 521 S.W.3d 710, 715 (Mo. App. W.D. 2017) (quoting *McMillan v. Pilot Travel Ctrs., LLC*, 515 S.W.3d 699, 706 (Mo. App. E.D. 2016)); *see also State v. Shegog*, 633 S.W.3d 362, 366 n.2 (Mo. 2021) ("'Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio*.'"; citations omitted).

Halderman also cites older Court of Appeals decisions which state that corporate officers *can be* held liable for inducing their corporate employers to breach a contract, if the corporate officers act from personal interests, or use

20

improper means. *See Lick Creek Sewer Sys., Inc. v. Bank of Bourbon*, 747 S.W.2d 317, 322-23 (Mo. App. S.D. 1988); *Green v. Beagle-Chilcutt Painting Co.*, 726 S.W.2d 344, 352 (Mo. App. W.D. 1987); *Nola v. Merollis Chevrolet Kansas City, Inc.*, 537 S.W.2d 627, 634 (Mo. App. 1976). To the extent these cases hold that a corporate officer or agent can be held liable for inducing their employer to breach a contract, if the conduct of the officer or agent is sufficiently egregious, those cases are inconsistent with *Farrow* and should no longer be followed on this point.

Patterson was entitled to judgment notwithstanding the verdict on Halderman's tortious interference claim. Patterson was not a third party to Halderman's employment contract with the City, and therefore could not be held liable for tortiously interfering with that contract. Point III is granted.

Appellants' fourth Point challenges the judgment against Patterson on a separate ground: that Halderman's tortious interference claim was barred by collateral estoppel (or "issue preclusion"), based on the City's unchallenged 2019 finding that just cause existed to terminate Halderman's contract. Given our disposition of Point III, it is unnecessary for the Court to address Point IV.

## III.

In their fifth Point, Appellants argue that the City was entitled to judgment notwithstanding the verdict on Halderman's wrongful discharge claim. Appellants argue that Halderman could not rely on § 105.055 to assert a wrongful discharge claim, because § 105.055 was amended to authorize claims against political subdivisions of the State only in 2018, *after* Halderman's 2017 termination. According to the Appellants' Point Relied On, applying the 2018

21

version of the statute to Halderman's 2017 termination "violated Mo. Const. Art. I § 13 prohibiting a law retrospective in its operation."

Prior to 2018, § 105.055.2(1), RSMo 2016 prohibited *state agencies* from taking disciplinary action against employees "for the disclosure of information which the employee reasonably believes evidences . . . [a] violation of any law, rule or regulation; or . . . [m]ismanagement, a gross waste of funds or abuse of authority . . ." (These substantive prohibitions now appear in § 105.055.3(1).) The pre-2018 version of the statute did not apply to political subdivisions of the State, however.

In 2018 – *after* Halderman's termination – the General Assembly revised § 105.055 so that it now applies to all "public employers," defined to include "any state agency or office, the general assembly, any legislative or governing body of the state, *any unit or political subdivision of the state*, or any other instrumentality of the state." § 105.055.1(3) (emphasis added; as amended by S.B. 1007, 99th Gen. Assembly, 2d Reg. Session (2018)). While municipal or county employees would not have been able to state a claim against their employers under § 105.055 prior to the effective date of S.B. 1007, they can now do so.

On appeal, the City argues that applying the post-2018 version of § 105.055 to its 2017 termination of Halderman imposes new legal consequences on the City for its pre-enactment conduct. The City contends that this violates Article I, § 13 of the Missouri Constitution, which provides "[t]hat no . . . law . . . retrospective in its operation . . . can be enacted."

There is a fundamental problem with the City's attempt to rely on Article I, § 13, however:  that constitutional provision does not grant rights to the State, or to political subdivisions of the State.  The Missouri Supreme Court only recently explained:

> Our constitutional prohibition against laws retrospective in operation is located in our citizen bill of rights.  "Because the retrospective law prohibition was intended to protect citizens and not the state, the legislature may constitutionally pass retrospective laws that waive the rights of the state." *Savannah R–III Sch. Dist. v. Pub. Sch. Ret. Sys. of Mo.*, 950 S.W.2d 854, 858 (Mo. banc 1997).  By extension, the legislature may also waive or impair the vested rights of political subdivisions, such as cities, without violating the prohibition on retrospective laws.  *Id.*

*Mo. Mun. League v. State*, 489 S.W.3d 765, 768 (Mo. 2016) (other citation omitted); *see also City of Aurora v. Spectra Commc'ns. Grp., LLC*, 592 S.W.3d 764, 800 (Mo. 2019).

The City argues that the principle announced in *Missouri Municipal League* only applies where a governmental entity is seeking to use Article I, § 13 affirmatively, to have a statute declared unlawful.  According to the City, *Missouri Municipal League* does not apply "[w]hen, as here, a private party asserts against a Missouri city a right predicated on retrospective application of a statute."  We are not persuaded that *Missouri Municipal League* applies only where a city is seeking to use Article I, § 13 as a sword rather than a shield.  Instead, the opinion broadly states that Article I, § 13 "'was intended to protect citizens and not the state,'" and that the General Assembly may "impair the vested rights of political subdivisions, such as cities."  489 S.W.3d at 768 (citations omitted).  *Missouri Municipal League*'s interpretation of Article I, § 13 is not limited to situations

23

where a city is using the constitutional provision offensively, rather than defensively.

Moreover, prior decisions which hold that Article I, § 13 is inapplicable to governmental entities do not draw the distinction the City now advocates. Instead, those cases refuse to apply Article I, § 13 even where a private party is invoking a new statute against a State entity or political subdivision. *See*, *e.g.*, *State ex rel. Meyer v. Cobb*, 467 S.W.2d 854, 855-56 (Mo. 1971) (mandamus action by taxpayers to dissolve a hospital district, based on the district's failure to comply with the requirements of a newly enacted statute; rejecting county's reliance on Article I, § 13 to avoid application of the new statute); *Dye v. Sch. Dist. No. 32 of Pulaski Cnty.*, 195 S.W.2d 874, 879 (Mo. 1946) (damages action by a teacher based on a school district's non-renewal of the teacher's employment contract; rejecting the district's argument that a new statute requiring early notice of non-renewal could not be applied to the teacher's existing contract; "The State, with respect to its school boards, had the right to waive or impair its own vested rights, if any."); *Graham Paper Co. v. Gehner*, 59 S.W.2d 49, 51–52 (Mo. 1933) (suit by taxpayer to enjoin collection of income taxes; holding that the predecessor of Article I, § 13 did not prohibit the legislature from retroactively reducing income taxes owing to the State).

The City cannot invoke Article I, § 13 to prevent application of the 2018 amendment to § 105.055 to Halderman's 2017 termination. Because the City's

argument against retroactive application of the 2018 amendment relies solely on Article I, § 13, Point V is denied.[2]

## IV.

In their sixth Point, Appellants argue that the City was entitled to judgment notwithstanding the verdict on Halderman's wrongful discharge claim, because the claim was time-barred. Appellants rely on § 105.055.7(1), which provides that "a person who alleges a violation of this section may bring a civil action against the public employer for damages within one year after the occurrence of the alleged violation." Appellants stress that Halderman did not move for leave to file an amended petition asserting a claim under § 105.055 until January 2020 – over one year after his 2017 termination, and over one year after the effective date of the 2018 amendment which made the statute applicable to the City.

Appellants fail to acknowledge, however, that the circuit court rejected the City's statute of limitations argument based on the relation-back principle embodied in Rule 55.33(c). Rule 55.33(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

After the circuit court granted the City's motion for summary judgment on the common-law wrongful discharge claim asserted in Halderman's original petition, Halderman moved for leave to amend his petition, to assert a wrongful discharge claim under § 105.055 (as amended in 2018). In his motion for leave,

---

[2] We take no position whether the City could have successfully argued against retroactive application of the 2018 amendment on some *other* constitutional or non-constitutional basis.

25

Halderman cited Rule 55.33(c), and asserted that the statutory cause of action he wanted to raise in the amended petition would relate back to the date of filing his original petition. Halderman emphasized:

> The wrongful conduct originally alleged has not changed, only the procedural vehicle for redressing it. Plaintiff's new claim under § 105.055 RSMo claim is substantively identical to, and arises out of the same conduct, transaction, or occurrence as, his original claim under the public policy exception to the at-will employment doctrine. Only the remedy has changed.

Halderman also relied on the relation back doctrine in response to the City's motion for judgment notwithstanding the verdict, which argued that his statutory wrongful discharge claim was barred by the one-year statute of limitations in § 105.055.7. Halderman's sole response was that his statutory wrongful discharge claim related back to the date on which the original petition was filed. After citing Rule 55.33(c), Halderman explained:

> Halderman's original petition asserted a claim for wrongful discharge in violation of public policy, alleging that he was targeted for termination because he reported domestic violence and child neglect by Patterson's friends and reported Patterson's own violation of the Sunshine Law. Those are the same facts alleged in support of his § 105.055 claim in his amended petition. Because that claim relates back to the filing of his original petition—filed approximately 36 days after his removal from office—it is not barred by 105.055's one-year statute of limitations.

The parties agreed during trial that the circuit court had granted Halderman leave to file an amended petition asserting a statutory wrongful discharge claim – over the City's statute of limitations objection – because the court concluded that the amended petition would relate back to the date on which the original petition was filed. During the instruction conference, the court asked

26

Halderman's counsel to explain the genesis of the statutory wrongful discharge claim. Counsel responded:

> I think the original argument was that the sovereign immunity waiver [found in the 2018 amendment to § 105.055] could just apply directly to [Halderman's common-law] wrongful discharge [claim], and *I believe the Court's prior ruling is that* instead, it created a waiver of sovereign immunity as to 105.055 and that Plaintiff could amend to add a 105.055 claim instead of the [common-law] wrongful discharge [claim] and *it would relate back to the original wrongful discharge*.

The City's counsel confirmed "[t]hat's a pretty good summary."

Despite the parties' acknowledgement that the court had ruled that Halderman's amended petition would relate back to the filing of his original petition, Appellants' briefing on the statute of limitations issue does not cite Rule 55.33(c), or address whether relation back principles apply here. Appellants clearly understood that application of the relation back doctrine was critical to the statute of limitations issue, since the argument on Point VI in their opening Brief concludes with this assertion:

> As the appellant in this action, Sturgeon can locate no Missouri case holding that an amended pleading asserting a newly created cause of action relates back to the date of the original filing for purposes of overcoming a time limitation set within the statute enacting the new cause of action.

As he did in the circuit court, Halderman's respondent's brief offered a single response to the City's statute of limitations argument: that his amended petition was timely because, by operation of Rule 55.33(c), it related back to the date on which the original petition was filed. Even though Appellants filed a lengthy reply brief responding in detail to many of Halderman's *other* arguments,

they offered *no* reply to Halderman's claim that relation back principles defeated the City's statute of limitations argument.

Because Appellants do not challenge the basis on which the circuit court rejected their statute of limitations argument, we summarily reject Point VI.

> While it may not be stated explicitly in Rule 84.04, the fundamental requirement for an appellate argument is that it demonstrate the erroneousness of the basis upon which a lower court or agency issued an adverse ruling. Unless an appellant challenges the grounds on which an adverse ruling depends, he has shown no entitlement to appellate relief.

*Rainey v. SSPS, Inc.*, 259 S.W.3d 603, 606 (Mo. App. W.D. 2008) (citations omitted). The single sentence in Appellants' opening Brief (which states only that they were unable to locate any authority addressing relation back in the precise circumstances of this case) was not sufficient to present the issue. That sentence cites no legal authority which would justify this Court in rejecting the circuit court's conclusion that the amended petition related back to the filing of Halderman's original petition – indeed, Appellants' briefing does not even cite Rule 55.33(c) itself, much less any of the copious caselaw applying the Rule (or its federal counterpart). "'Where a party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned.'" *State v. Boyd*, 659 S.W.3d 914, 929 (Mo. 2023) (quoting *Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 498-99 (Mo. 1995); other citation omitted).

Point VI is denied.[3]

---

[3] Because the issue was not properly presented for our review, we take no position whether the circuit court correctly applied the relation back doctrine to Halderman's statutory wrongful discharge claim.

# V.

Appellants' final three points claim that the circuit court erroneously excluded evidence proffered by the Appellants, justifying a new trial.

We review a circuit court's decision to admit or exclude evidence for an abuse of discretion. *State v. Wilson*, 602 S.W.3d 328, 332 (Mo. App. W.D. 2020). The circuit court has "'broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances,'" *State v. Primm*, 347 S.W.3d 66, 70 (Mo. 2011) (quoting *State v. Reed*, 282 S.W.3d 835, 837 (Mo. 2009)), or "'is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Shallow v. Followell,* 554 S.W.3d 878, 881 (Mo. 2018) (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. 2014)). "'If reasonable persons may differ as to the propriety of an action taken by the trial court, then there was no abuse of discretion.'" *Williams v. City of Kansas City*, 641 S.W.3d 302, 330 (Mo. App. W.D. 2021) (*en banc*) (quoting *Lewellen v. Franklin*, 441 S.W.3d 136, 149 (Mo. 2014)).

"Even if the trial court has abused its discretion in excluding evidence, [we are] loath to vacate a jury's verdict and resulting judgment on such grounds." *Lozano*, 421 S.W.3d at 451. "An erroneous evidentiary ruling warrants reversal, therefore, only when it 'affects the result or the outcome of the case'"; "'exclusion of evidence which has little, if any, probative value is usually held not to materially affect the merits of the case and hence, error in rejecting such evidence is not grounds for reversal.'" *Id*. at 452 (citations omitted).

29

## A.

In Point VII, Appellants argue that the circuit court erred by excluding their Exhibit C, a record of the Board of Aldermen's 2019 decision to terminate Halderman's employment (a decision which Halderman did not further challenge).

Appellants' primary argument concerning Exhibit C is that its admission would have established that Halderman's tortious interference claim was barred by collateral estoppel or issue preclusion. In § II above, we have reversed the judgment against Patterson on Halderman's tortious interference claim. In light of our reversal of the judgment on the tortious interference claim, it is irrelevant whether the circuit court made erroneous evidentiary rulings in connection with that claim. (Notably, Appellants do not contend that collateral estoppel was available as a defense to Halderman's wrongful discharge claim against the City.)

Other than contending that Exhibit C would have been relevant to Patterson's collateral estoppel arguments, Appellants' Brief merely states, without citation of authority, that admission of Exhibit C "could very well [have led the jury to] view the actions of the 2017 board in a much more favorable light." This conclusory, unsupported argument is insufficient to preserve any claim of error. *Boyd*, 659 S.W.3d at 929 (quoting *Beatty*, 912 S.W.2d at 498-99). (It is unclear what the basis would be for admitting the opinions of third parties concerning whether "just cause" existed for Halderman's termination, separate from any collateral estoppel argument.)

Point VII is denied.

30

## B.

In Point VIII, Appellants argue that the circuit court erred in excluding Exhibit M, a series of Halderman's Facebook posts from March and April 2019, in which he expressed anti-Muslim sentiments. Appellants claim that these Facebook posts, which apparently received some attention in the local news media, would have been relevant to Halderman's damages claim, since they might explain why Halderman had difficulty securing other employment following his termination by the City.

The circuit court did not abuse its discretion in excluding Exhibit M. Halderman asked the jury to award damages solely for the time period from his initial termination on March 28, 2017, through the City's second termination decision on April 30, 2019. The Facebook posts in question were made in late March and April 2019, near the conclusion of the damages period, and at a time when Halderman had been reinstated as Chief of Police by the City. The circuit court did not abuse its discretion in concluding that the posts presented a risk of unfair prejudice which outweighed their limited probative value.

## C.

Finally, in Point IX, Appellants argue that the circuit court erred in not permitting them to present evidence that Halderman had been fired from employment in a municipal police department in 1996, and had his law-enforcement license disciplined, for kissing a sixteen-year-old in his patrol car, while on duty and in uniform. Appellants argued in the circuit court that this evidence was relevant to rebut Halderman's claim that he had "learned his lesson" after being disciplined by the City for a similar incident in 2014. Appellants also argued that this evidence would be relevant to rebut Halderman's

claim that the City's actions had made it difficult for him to secure alternate employment.

In excluding evidence concerning the basis for Halderman's 1996 termination and discipline, the circuit court noted that it had permitted Appellants to ask Halderman generally about the fact that he had been terminated from law-enforcement employment on multiple prior occasions. Further, the court noted that the 1996 incident was not relevant to whether Halderman had "learned his lesson" from his 2014 discipline, since the 1996 incident occurred *before* the 2014 discipline, not afterwards.

Given that Appellants *were* permitted to elicit testimony that Halderman had been fired from employment on multiple prior occasions; that the excluded evidence was not relevant to demonstrate how Halderman responded to his 2014 discipline by the City; and that the evidence involved an incident which had occurred more than 15 years before Halderman was first employed by the City, the circuit court did not abuse its discretion by excluding evidence concerning the specifics of the 1996 incident.

Point IX is denied.

## Conclusion

We affirm the circuit court's determination that Halderman's 2017 termination should have been handled as a contested case under the Missouri Administrative Procedure Act, and its award of damages to Halderman on his wrongful-discharge claim against the City. The judgment entered against Patterson for tortious interference with contract is reversed.

Halderman filed a motion for attorney's fees on appeal against the City under § 105.055.7(4), which authorizes the court to "award the complainant all or

a portion of the costs of litigation, including reasonable attorney fees." As with the similarly worded fee-shifting provision of the Missouri Humans Rights Act, we conclude that § 105.055.7(4)'s authorization of an award of fees "'includes fees incurred on appeal from the trial court's judgment.'" *Washington v. Sioux Chief Mfg. Co.*, 662 S.W.3d 60, 80 n.7 (Mo. App. W.D. 2022) (quoting *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 58 (Mo. App. W.D. 2016)). Because Halderman has successfully defended his judgment against the City on appeal, we grant his motion for attorney's fees. As in *Washington* and *Soto*, we remand to the circuit court to conduct further proceedings regarding the reasonableness of the fees and expenses Halderman seeks to recover, and for entry of an appropriate monetary award.

_____

Alok Ahuja, Judge

All concur.